(101 App. Div. 22)

MILLER v. F. R. PATCH MFG. CO.

(Supreme Court, Appellate Division, Second Department. January 27, 1905.)

1. SALES—WARRANTY—ACCEPTANCE.

Where defendant warranted a derrick sold to have a lifting capacity of 50 tons, with a factor of safety of 5—meaning that it would require a load of 250 tons to break down the derrick—such warranty was of a character which survived the acceptance of the derrick by the buyer.

2. SAME—CORRESPONDENCE—CONSTRUCTION.

Where, on the sale of a derrick, the president of the seller corporation wrote the buyer, "We fully guarantee machinery, and if the same gives out through any fault of ours, we will replace it," the term "machinery" was sufficiently broad to include the whole of the derrick and appliances furnished by the seller.

3. SAME—ACTIONS—INSTRUCTIONS.

Where, in an action for breach of warranty in the sale of a derrick, it was contended that the derrick did not have fair treatment in the hands of the buyer, and that it was being used in a careless and negligent manner at the time it fell, an instruction that plaintiff could not recover if the derrick was caused to fall in consequence of having been used in an unreasonable manner, not contemplated by the warranty, was proper.

4. SAME—DAMAGES.

Where, prior to the sale of a derrick, the seller's president visited the quarry where it was to be used, and thereafter wrote the buyer that the machinery was fully guarantied, and that, if it gave out through any fault of the seller, it would replace it, it was not error to permit a recovery, in an action for breach of the warranty, of the reasonable cost of repairing the derrick, instead of the difference between its actual value with its defects and its value at the time of the sale if it had conformed to the warranty.

Appeal from Trial Term, Queens County.

Action by Pierre V. C. Miller against the F. R. Patch Manufacturing Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, and HOOKER, JJ.

Walter C. Flanders (Charles Wheeler Barnes, on the brief), for appellant.

Alfred B. Cruikshank (J. C. Thomson, on the brief), for respondent.

WILLARD BARTLETT, J. In this action the plaintiff has recovered judgment against the defendant upon a verdict awarding him $1,648.75 damages for breach of warranty upon the sale of a derrick. The parties to the contract were the American Stone Company and the defendant corporation. The plaintiff brought the suit as assignee of the American Stone Company. There was sufficient proof to establish the alleged warranty. The evidence authorized the jury to find that the defendant guarantied that the derrick should have a lifting capacity of 50 tons, with a factor of safety of 5; the latter phrase meaning that it would require a load of 250 tons to break down the derrick. As matter of fact, the derrick broke down while lifting a stone which weighed only 27 or 28 tons.

The warranty was of a character which survived the acceptance of the derrick by the American Stone Company: That it was intended to survive acceptance is manifest from a letter written by Mr. F. R. Patch, the president of the defendant corporation, in the name and in behalf of the company, in which he said to Mr. Washington Hull, the president of the American Stone Company:

"As I said to you, we fully guarantee machinery, and if the same gives out through any fault of ours, we will replace it, so that you do not need to hold back the payments on that account."

The term "machinery," in this letter, was broad enough to include the whole of the derrick and appliances furnished by the defendant, and was apparently so intended. There having been an express warranty, the vendee, upon a breach thereof, became entitled to maintain an action for damages, notwithstanding its retention of the derrick. Day v. Pool, 52 N. Y. 416, 11 Am. Rep. 719; Hooper v. Story, 155 N. Y. 171, 49 N. E. 773. At the instance of the defendant, the learned trial judge greatly restricted the issues as to the defect in construction which caused the derrick to collapse; charging the jury as follows at the request of the defendant's counsel:

"Before the plaintiff can recover, the jury must believe that plaintiff has proved that the gudgeon pin was the first thing to break, and, further, that the defendant had warranted the pin against just such a strain as broke it; otherwise their verdict must be for the defendant."

This was doubtless because of the specific allegation in the complaint that the gudgeon pin or spindle at the masthead of the derrick was made of cast iron, which was an insufficient and defective material, by reason of which latent defect the pin broke, causing the fall of the boom and mast, and the consequent damage. The appellant insists that the plaintiff failed to prove that the collapse was occasioned by the breaking of the gudgeon pin, but I think that all the facts and circumstances of the accident, as narrated in the testimony, warranted the jury in concluding that the fall of the derrick was actually due to the insufficiency of this pin.

It was contended upon the trial that the derrick did not have fair treatment at the hands of the American Stone Company, and that it was being used in a careless and negligent manner at the time of the accident. This was denied, and, of course, presented a question for the jury, to whom it was very fairly submitted by the learned trial judge, with instructions that the plaintiff could not recover if the derrick was caused to fall in consequence of having been used in an unreasonable manner, not contemplated by the covenant of warranty.

The measure of damages generally applicable in an action for breach of warranty is the difference between the actual value of the object sold, with its defects, and the value which it would have had at the time of sale if it had conformed to the warranty. Bruce v. Fiss, Doerr & Carroll Horse Co., 47 App. Div. 273, 62 N. Y. Supp. 96 (opinion by Cullen, J.). In the present case, however, the plaintiff has been allowed to recover the fair and reasonable cost of repairing the derrick, so as to put the purchaser in the same position in respect to the derrick as existed before the accident happened. There was proof that the cost of repair was upwards of $1,800, but the jury awarded the plain-

tiff only $1,500, with interest. I think the measure of damages adopted was permissible, under the circumstances of this case. The president of the defendant corporation visited the quarry in which the derrick was to be used, before receiving the order therefor, and there can be no doubt that the warranty had reference to the construction of a derrick to be operated in that particular place in the work of removing stone. To this extent, the warranty was special. Then the letter from Mr. Patch, in the passage already quoted, where he wrote, "We fully guarantee machinery, and if the same gives out through any fault of ours, we will replace it," clearly contemplates the expense of making good any defect for which the vendor was responsible, as the obligation to be assumed by the vendor in the event of a breach of warranty. This seems to bring the case squarely within the rule "that the damages must be such as may fairly be supposed to have entered into the contemplation of the parties; such as might naturally be expected to flow from violation of the contract; such as are certain both in their nature, and in respect to the cause from which they proceed." Cassidy v. Le Fevre, 45 N. Y. 562. In the case cited, which was an action upon promissory notes given for the purchase price of certain boilers, which proved to be defective and collapsed after delivery, the Court of Appeals held that the defendant might recoup all damages necessarily and legitimately resulting from the inferior character of the materials or the defective construction of the boilers. "Had they claimed the cost and expense of taking down the boilers after the injury," said Allen, J., "and resetting them after they were repaired, they would have been entitled to it. That was a direct loss, legitimately and necessarily resulting from the defects of the boilers and the violation of the plaintiff's contract." And this was held notwithstanding the fact, previously stated in the opinion, that the contract of the plaintiff had no reference to the use of the engine and machinery sold for any special purpose or in any particular place.

I cannot see that any error of substance was committed in the conduct of the trial under review, and I think we should affirm the judgment and order appealed from.

Judgment and order affirmed, with costs. All concur.