Note.—See under (1) 35 Cyc. pp. 974, 989; (2) 35 Cyc. pp. 1002, 1003.

---

## CLEVELAND et al. v. HIGHTOWER.

No. 13924—Opinion Filed March 10, 1925.

(Syllabus.)

### Oil and Gas — Laborers' Statutory Lien — Hauling Casing to Drilling Point.

He, who as a laborer, under agreement with a subcontractor, hauls with his team casing from a point off a leasehold onto a leasehold for oil and gas purposes, which casing is to be used as a part of the machinery or equipment for drilling a well on such leasehold, is entitled to a lien for the agreed amount, as a laborer, under the applicable provisions of the statute (sections 7464 and 7466, Comp. Stats. 1921).

Error from District Court, Stephens County; Cham Jones, Judge.

Action by J. W. Hightower against E. Cleveland and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Bond & Morris, for plaintiffs in error.

Wilkinson & Saye, for defendant in error.

BRANSON, V. C. J. J. W. Hightower, as plaintiff, brought suit in the district court of Stephens county, against Joseph Danciger, the Pioneer Oil Company, and the Underwood Drilling Company, owners of an oil and gas leasehold, and E. Cleveland and Ed Saunders, as contractor and subcontractor, to subject the said leasehold and personal property located thereon to a lien for hauling certain casing from the city of Duncan, a distance of approximately nine miles, for a consideration of $10 per load; and certain other similar claims which the plaintiff held by assignment, and which stood on the same basis as the individual claim.

The defendant Danciger had made a contract with one Ed Saunders to haul said casing for $500, whereupon Saunders sub-let his contract to one Cleveland for $400, and Cleveland engaged the plaintiff and plaintiff's assignors to perform the work.

Each lien case being dependent entirely upon the statute, it is not useful to discuss whether the statute is to be strictly or liberally construed. The intent of the Legislature, when ascertained, is controlling, and when such intent is in dispute, as in the

instant case, the court cannot sidestep the burden its duty imposes upon it to determine what the act of the Legislature means.

If the plaintiff has any lien, it is by reason of the special lien statute as to oil and gas leaseholds, the same being sections 7464 and 7466, Comp. Stat. 1921. The first section provides (omitting those parts which are not material here for clear understanding of the statute) as follows:

"Any person * * * who shall, under contract express or implied, with the owner of any leasehold for oil and gas purposes * * * perform labor * * * used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well, or who shall * * * perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing * * * any gas well, shall have a lien," etc.

Section 7466 provides:

"Any person * * * who shall perform such labor under a subcontractor with a contractor * * * may obtain a lien upon said leasehold for oil and gas purposes * * * in the same manner and to the same extent as the original contractor, for the amount due him for such labor, as provided in the preceding section."

It is admitted that the said defendants, designated above, owned the leasehold; that the contract made to haul the pipe to the leasehold was made with Saunders, and Saunders made a subcontract with Cleveland, and that the plaintiff, working in accordance with his agreement with Cleveland, by his labor and the use of his team, transported the pipe from the city of Duncan to the premises on which the well was to be drilled. The last above quoted section of the applicable lien statute defines the character of labor by reference therein contained to section 7464, as:

"Any labor in constructing or putting together any of the machinery used in drilling * * * any oil well or gas well."

Plaintiff's labor was under the subcontractor Cleveland. He not only furnished his personal labor, but coupled therewith, and directed by it, a team, which was the instrumentality, guided by his intelligent direction, that transported the pipe or casing to the premises on which the oil well was to be drilled. To place the casing upon the leasehold premises, the subcontractor not only engaged the plaintiff, but others who did the same kind of work, and who assigned their claims to the plaintiff, and this entitles, under the statute,

plaintiff and his assignors to the lien on the leasehold filed and sought to be foreclosed herein, if within the interpretation of the statute this kind of labor falls within the intent of the said legislative enactment. If plaintiff is entitled to a lien, it is because, as a matter of law, he, under the facts in this case, falls within the classification referred to in the statute as "a laborer" under a subcontractor. The statute goes no further by its terms than to recognize a contractor, a subcontractor, laborers, and materialmen. If the person referred to as entitled to a lien does not, under the facts, fall within the class as a contractor or subcontractor, he must be in the class of laborers, or those who furnish material. The plaintiffs in error make the point that the statute does not expressly provide for hauling casing to a lease, and that for this character of labor no lien is, by the statute, given.

We think, without quoting at length the authorities as to interpreting lien statutes, that when the fair and reasonable interpretation of the statute in question is ascertained, and thereby the intent of the Legislature reached, if plaintiff falls within the class of persons included in such interpretation of the statute, then he has a lien; otherwise he has not. Eberle v. Drennan, 40 Okla. 59, 136 Pac. 162; Bryan v. Orient Lumber & Coal Company, 55 Okla. 370, 156 Pac. 897; Neves v. Mills, 74 Okla. 7, 176 Pac. 509.

In the case of Kansas City Southern Railway Co. v. Wallace et al., 38 Okla. 233, 132 Pac. 908, this court considered section 7473, Comp. Stats. 1921, being the railroad lien statute, which provides:

"Every * * * laborer * * * who shall do or perform any work or labor upon, or furnish any materials * * * towards the equipment, or to facilitate the operation of any railroad, shall have a lien therefor upon the roadbed, buildings," etc.

In that case the lien claimant constructed cement abutments, and it was contended that under the statute no person could have a lien, except those who furnished labor or material towards the equipment of the railroad, or to facilitate the operation of such equipment, and that equipment meant cars, locomotives, etc., and the work of the plaintiff in that case did not fall therein.

Disposing of the case, the court followed the rule that such construction should be given to such statutes as is in consonance with the purposes of the Legislature in adopting the statute itself; and as said in

another railroad lien case, involving practically the same contention (Kansas City Southern Railway Company v. Rosier et al., 38 Okla. 231, 132 Pac. 908). "Why should the Legislature give a lien to the man who performs work on the equipment and not to the man who builds the roadbed?"

The plaintiffs in error seem to further contend that the phraseology of the statute, "in constructing or putting together any of the machinery used in drilling," etc., is limited to labor upon the premises in actually putting together or constructing the machinery used in drilling the well. We think that the provision of the statute would best reach the intent of the Legislature by being paraphrased so as to read:

"Any person * * * who shall perform any labor towards constructing or putting together any of the machinery (meaning the devices necessary in drilling or operating the oil well) shall have a lien," etc.

The word "in," as used in the statute preceding the word "constructing," carries with it the idea of either "towards" or "necessary for" constructing or putting together, etc. The preposition "in," as used in this statute, is used out of its ordinary meaning, and carries with it the broader idea as expressed by the said words "towards" or "necessary for."

For paraphrasing the language of this court in the above cited case (Kansas City Southern Railway Company v. Rosier et al., supra) why should the Legislature give a lien to the person who takes the casing when delivered upon the leasehold, screws the different joints together, lets them down into the well, as necessary for its operation and completion, which casing could not be on the leasehold but for the labor of the man who hauled it there, and at the same time deny the same character of protection to the laborer, the culmination of whose toil, though begun off the premises, resulted in the delivery of the casing where it should play its part necessary for constructing and operating the machinery or equipment for an oil well? We think this interpretation of the statute is further justified by the use of the broad term "any labor" preceding this phraseology; in other words, the Legislature intended to give a lien, and did by the language employed give a right to the lien, to any laborer whose labor is necessary for constructing or putting together the equipment, in either drilling or operating an oil or gas well, whether that labor have its inception off the premises and its culminating effect towards the equipment of the leasehold on the premises, or whether it be done solely upon the leasehold. This position is sustained in reason by the text found in 27 Cyc. 44, as well as by the following cases: Wells v. Christian, 165 Ind. 662, 76 N. E. 518; McClain v. Hutton, 131 Cal. 132, 61 Pac. 273, 63 Pac. 182; Tabor v. Armstrong, 9 Colo. 285, 12 Pac. 157; Fowler v. Pompelly, 76 S. W. 173, 25 Ky. L. Rep. 615; McKeen v. Haseltine, 46 Minn. 426, 49 N. W. 195; Hill v. Newman, 38 Pa. St. 151, 80 Am. Dec. 473; Holeman v. Redemptorist Fathers, 4 Pa. Co. Ct. 233; Tizzard v. Hughes. 3 Phila. 261; Kehoe v. Hansen, 8 S. D. 198, 65 N. W. 1075, 59 Am. St. Rep. 759; No. 34 Cent. Dig. tit. "Mechanics' Liens," section 47.

Again, the word "machinery," as used in this controlling part of section 7464, supra, does not in its restricted sense carry with it the clear import the Legislature intended such word should carry. In its restricted sense, it can properly be held to refer to what is commonly known as some device or machine. One definition of "machinery" is given by Webster as:

"The means and appliances by which anything is kept in action, or a desired result is obtained."

The derrick erected upon an oil and gas leasehold would not be considered "machinery" in the restricted sense. Yet it is included in such terms as it is used in the said act of the Legislature, meaning an appliance or means by which a desired result is obtained. The person who performs labor upon the derrick would be, within the meaning of this clause of the statute, entitled to a lien. The casing, the hauling of which is involved herein, could not be considered "machinery" in the restricted sense of that term, but within the meaning of the Legislature, casing being a device or a means which is necessary to accomplish the desired result, to wit, drilling and development of the leasehold for oil and gas, it falls within the meaning of the Legislature in its use of this term. If what plaintiff did, as set out above, was the rendition of labor necessary for constructing or putting together any of the devices necessary to accomplish the result of developing the leasehold, then within the meaning of the statute both the plaintiff and his assignors would have a lien, and the judgment of the trial court should be affirmed.

That a laborer, under the last-quoted section, supra, who works under a subcontractor, stands on the same basis as to a right to a lien as a laborer under a contractor, we think is made clear by the fair import of the language used. But the de-

fendants contend that the plaintiff was excluded from such class, for that, within the compensation which he was to receive was included the use or work of his team, and that under this contention he was not a laborer within the meaning of the statute, but rather a subcontractor under a subcontractor.

In a case from the state of Idaho (Hill et al. v. Twin Falls Salmon River Land & Water Company, (125 Pac. 204), in discussing the right of a materialman to include within his lien the cost of the hauling of the material, that court said he—

"May include in a claim of lien not only the value of the material, but the cost of delivery to the place of use."

In the case of Martin v. Wakefield et al. (Minn.) 43 N. W. 966, in discussing whether or not a person who claimed a laborer's lien under a statute granting the same could include therein the work of his team, that court said:

"The timber cannot be cut without axes, or hauled or 'banked' without teams. Remedial statutes are to be liberally construed to advance the remedy. The Legislature could not have intended to exclude this use of those appliances or instrumentalities which are absolutely necessary to the performance of the various departments of labor enumerated in the statute."

In the case of Kehoe v. Hansen (S. D.) 65 N. W. 1075, in discussing a similar item in a laborer's lien claim, under the general mechanic's lien statute, said:

"Labor, therefore, in getting the material together upon the ground, ready for the structure, is fairly within the meaning of our mechanic's lien law or work upon the building,—work that enters into, and constitutes labor upon, the building."

Hill v. Newman, 38 Pa. St. 152. To the same effect is the case Klondike Lumber Company v. Williams Bros. (Ark.) 75 S. W. 854, in which the court said:

"This lien, we think, should include the value of the use of their wagon and team when actually driven and used by them in performing the work; for in such a case labor of one who uses a wagon and team or other instrumentality furnished by himself in the performance of his work includes both the work of himself and that of the instrumentality by which he performs it, and he has a lien for the value of all his labor."

McElwaine et al. v. Hosey et al. (Ind.) 35 N. E. 272. This question is not novel to this jurisdiction, for in discussing the right of such item to go in as part or an element of a laborer's lien, this court said in an early case (Kansas City Southern Railway Company v. Wallace, 38 Okla. 233, 132 Pac. 909):

"That 'laborer' embraces all who work with their hands, crude implements or teams in work demanding that character of service."

Certainly in the instant case, the team belonging to the plaintiff and the teams belonging to the other persons similarly situated, who had assigned their claims to the plaintiff, were merely the instrumentalities through which the intended results of their toil were better effectuated. They might, of course, have transported the casing by carrying the same on their shoulders, but the other method was more expeditious.

Defendants further contend that the plaintiff was a subcontractor under a subcontractor, and the lien statute was not extensive enough to include him. It is clear that the statute gives a lien, as stated above, to a contractor, a subcontractor, laborers, and materialmen. We fail to find that the record discloses that the plaintiff was other than a laborer under the subcontractor, and the finding of the trial court to this effect is sustained by the record. It is our conclusion, therefore, that none of the contentions made by the plaintiffs in error are sustained in reason or authority, and that the judgment of the trial court granting the lien, whatsoever ground was assigned by it for its holding, should be affirmed.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.