## McCORD et al. v. HOUSING AUTHORITY OF CITY OF DALLAS et al.

### No. 14300.

Court of Civil Appeals of Texas. Dallas.

Oct. 20, 1950.

Rehearing Denied Nov. 10, 1950.

Writ of Error Denied Jan. 3, 1951.

See 236 S.W.2d 115.

Coke & Coke, Rosser J. Coke, Sr., Walter B. Branan, Thompson, Coe & McCord, Aubrey J. Roberts, and Ungerman, Hill & Ungerman, all of Dallas, for appellants.

H. P. Kucera, City Atty., H. Louis Nichols, Asst. City Atty., and Scurry, Scurry & Pace, all of Dallas, and Chas. W. Duke, of San Antonio, for appellees.

YOUNG, Justice.

Appellees, City of Dallas and Housing Authority of the City of Dallas, filed this suit for declaratory judgment to determine the validity of a plan of slum clearance and urban redevelopment as defined in Title 1, Chap. 338, 81st Congress, Federal Housing Act of 1949, Title 42, § 1451, et seq., U.S.C.A. On trial to the court, judgment was rendered declaring that appellees had the powers and authority necessary and requisite for the undertaking and carrying out of such project or projects.

Under aforesaid plan appellees proposed to acquire the realty of appellants and oth-

ers situated in an alleged slum area by purchase, and if necessary, by exercise of the power of eminent domain; to clear and replan the areas, install new streets, sewers, water mains, and other facilities, and then to sell or lease the land to third parties or agencies for the building of improvements in accordance with a scheme of redevelopment approved by the Dallas City Council. Appellants were McCord, sued individually and as representative of a class consisting of other property owners in the district, and intervening taxpayers H. Leslie Hill, W. W. Caruth, W. B. Oldham and E. P. Lamberth; complaining parties asserting generally an entire lack of constitutional or legislative power on part of appellees to condemn property for the purposes in question; and if Art. 1269k—1, Vernon's Ann.Civ.St., be relied on by appellees, their project of redevelopment was wholly outside the scope of our State Housing Law. The Housing Authority of the City of Dallas will be hereinafter referred to as "Housing Authority" and the City of Dallas as "City."

Bearing on the controversy are these facts, taken from briefs of appellees: Housing Authority is a governmental agency, created under the Housing Authority Law, Acts 1937, Art. 1269k, Vernon's Ann.Civ.St. and, pursuant to said law, was authorized to function in the City by virtue of a resolution of its Council adopted March 11, 1939. On October 4, 1949 the City Council adopted a resolution designating the Housing Authority as the local public agency to undertake slum clearance and redevelopment projects under Title 1 of the Federal Housing Act of 1949; approving the filing of an application by the Housing Authority to the Administrator of the Federal Housing and Home Finance Agency for an advance of funds for surveys and plans in preparation of projects entitled to assistance under said Title 1; and declaring that its intent and purpose was the undertaking of appropriate and feasible slum clearance and redevelopment projects under said Federal Act that may be developed as a result of such plans and surveys. On April 10, 1950 the Housing Authority entered into a contract with the United States of America, acting through said Housing and Home Finance Administrator, for an advance of $60,950 by the Administrator for the purpose of making plans and surveys in two designated districts, one described as the "Mill Creek" area in which appellant McCord owned property; and by amendment to that contract the second area was changed to one bounded by Bryan, St. Joseph, Live Oak, and Adair Streets. (Under this Congressional Act of 1949, the Federal aid for cost of approved projects of slum clearance and redevelopment was to be a two-thirds part, the City assuming a one-third of cost; the latter alleging in petition that the Federal Administrator had already made reservation of a capital grant to its Housing Authority in amount of $1,758,-000 in connection with such projects.)

On April 24, 1950 Housing Authority adopted a resolution describing the Mill Creek district and declaring it to be a slum area as defined by the Housing Authority Law. The resolution also recited that the Authority should immediately proceed to acquire title to the realty involved, by purchase or by way of eminent domain, for redevelopment according to aforesaid plan; all of which being a necessary undertaking for elimination of slum conditions, thereby protecting and promoting the public health, safety, and morals of the City of Dallas.

Further facts were stipulated (objections going to their materiality) to effect that $16,000 had already been advanced by the Federal Administrator to the Authority for immediate investigation and surveys; that the Mill Creek area and the vicinity immediately surrounding were zoned M–1 (manufacturing) under City ordinance, and, although so zoned, there were in said area 378 residential structures, 8 churches, and 25 commercial buildings; that the project-area is less than one-half mile from City Hall, the section adjacent to and north of Mill Creek area being developed with modern commercial and warehouse buildings; to the east and south, residential; the lands to the west largely open, with some residential and

commercial buildings; while the area north and northwest extending to downtown business district is well developed, both industrially and commercially.

These stipulations included reports and surveys by City Health Department and Housing Authority on residences in the District with reference to the presence or lack of water service, plumbing, lights, gas, and toilet facilities, indicating, at least on their face, substandard living conditions; 71% being occupied by Negroes, 15% by whites, and 14% by Latin-Americans. From information obtainable on 371 houses, 57 were occupied by owners and 314 by tenants, the authority survey showing that 1,240 people were living in 308 houses.

Major Wood, formerly City Plan Engineer and presently Zoning Inspector, testified to a familiarity with the designated area since 1925, the same having been considered and recommended for redevelopment in the earlier Bartholomew Report and Master Plan for the City of Dallas. It was his opinion that in the redevelopment of such a district where there were some vacant properties, it was necessary to acquire the entire area (some 65 acres) in order to properly reconstruct same with respect to streets and utilities; to replat the lots in accordance with existing zoning ordinances and to specify the uses to which the whole property could be put, either through adoption of a plan of redevelopment or rezoning. Various sections of the Dallas City Code were also in evidence.

Final relief was granted to appellees in accordance with their pleading and prayer, the court's judgment reciting in part: " * * * and it is further specifically decreed, determined and declared by the Court that the Housing Authority of the City of Dallas, Texas, in cooperation with the City of Dallas, has the power and authority: (1) To acquire by purchase or by the exercise of the power of eminent domain the fee simple estate to real property, together with all improvements thereon, situated within a slum clearance and redevelopment area; (2) to prepare plans for the redevelopment of such area, specifying the reuses to which such lands may be put; (3) to sell or lease such lands to private persons, firms, corporations, associations or public bodies and political subdivisions of the state, for private and for public uses consistent with the plans for redevelopment as adopted by the City of Dallas; (4) to obligate the lessees or purchasers of such lands to comply with such covenants and conditions in such sales or leases as the Housing Authority of the City of Dallas may determine are reasonably necessary to carry out the purposes of the redevelopment plan. It is further ordered, adjudged, decreed, determined and declared by the court that the City of Dallas has the power: (1) To appropriate and transfer public moneys to the Housing Authority of the City of Dallas for such slum clearance and redevelopment purposes; (2) to expend public moneys in the planning and construction of streets, sewers, paving, sidewalks, curbs, public buildings and other public facilities, to serve such redevelopment area, and (3) to enter into agreements with the Housing Authority of the City of Dallas and with the Administrator of the Housing and Home Finance Agency respecting any action to be taken by the City pursuant to the exercise of such powers."

In sum, appellees Authority and the City here have sought and obtained judicial sanction for the taking of two large areas specifically defined in their pleadings, also other areas that the Authority may hereinafter designate, by purchase or by exercise of the power of eminent domain; the described localities having already been determined by resolution of the Housing Authority to be slum areas for redemption by a process of redevelopment. After condemnation or purchase, as the case may be, title to the affected properties would repose for a period in the Housing Authority, during which interval the City proposes to carry out its plan for redevelopment by installation of public facilities in way of streets, curbs, gutters, sewers, etc., such as may be decided upon by the Authority, approved by City Planning Commission and City Council; the Authority then proposing "To sell or lease such lands to *private persons,* firms, corporations, associations or

public bodies and political subdivisions of the state, for *private* and public uses * * ". (Emphasis ours.)

The primary issue here involved centers around power of the Housing Authority to exercise the right of eminent domain in connection with its projects of slum clearance concurrently with a redevelopment of so-called blighted areas. The Authority is a creature of statute, Art. 1269k, Vernon's Ann.Civ.St. with functions and purposes set forth in such statute, section 8(h) thereof reading in part: "* * * No provisions of law with respect to the acquisition, operation, or disposition of property by other public bodies shall be applicable to an authority unless the Legislature shall specifically so state." Obviously, the right of appellee agency to condemn the land of appellant and others similarly situated, as for a public use, must be found in the provisions of the foregoing legislation (Housing Authority Law) or not at all. It is the position of appellants that the cited statute confers no such powers.

Art. 1269k, sec. 2(c), makes the following declaration of public purposes and uses: "that the clearance, replanning, and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired and are governmental functions of State concern; that it is in the public interest that work on such projects be commenced as soon as possible in order to relieve unemployment which now constitutes an emergency; and the necessity in the public interest for the provisions hereinafter enacted; is hereby declared as a matter of legislative determination." A slum is defined, sec. 3(h), as: "* * * any area where dwellings predominate which, by reason of delapidation, overcrowding, faulty arrangement or design, lack of ventilation, light, or sanitary facilities, or any combination of these factors, are detrimental to safety, health, and morals"; a housing project, paragraph i, "shall mean any work or undertaking: (1) to demolish, clear, or remove buildings from any slum area; such work or undertaking may embrace the adaption of such area to public purposes, including parks or other recreational or community purposes; or (2) to provide decent, safe, and sanitary urban or rural dwellings, apartments, or other living accommodations for persons of low income; such work or undertaking may include buildings, land, equipment, facilities, and other real or personal property for necessary, convenient, or desirable appurtenances, streets, sewers, water service, parks, site preparation, gardening, administrative, community, health, recreational, educational, welfare, or other purposes; or (3) to accomplish a combination of the foregoing. The term 'housing project' also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration, and repair of the improvements and all other work in connection therewith." Sec. 12 reads in part: "An authority shall have the right to acquire by the exercise of the power of eminent domain any interest in real property, including a fee simple title thereto, which it may deem necessary *for its purposes under this Act* after the adoption by it of a resolution declaring that the acquisition of the real property described therein is necessary for such purposes." (Emphasis ours.)

Also passed in 1937 was "Housing Cooperation Law," Art. 1269*l*, Vernon's Ann. Civ.St., authorizing the co-operation of cities with Housing Authorities and the Federal Government. The foregoing articles were pursuant to and in contemplation of the United States Housing Law of 1937, Title 42, Chapter 8, U.S.C.A. § 1401 et seq., authorizing projects of slum clearance and the building of low rent houses through State agencies. In Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, our Supreme Court has held that Arts. 1269k and 1269*l* were passed for the purpose of carrying out housing projects, and by "Housing Project," quoted above, was meant either slum

clearance or the building of living accommodations for persons of low income or a combination of both; and that those legislative Acts, both State and Federal, set forth public uses and purposes for which a Housing Authority may be granted the power of land acquisition by way of eminent domain. While the Supreme Court concluded that slum clearance and low rent housing were concurrently to be viewed as matters of public concern, the particular case was limited to a holding that housing projects might be constructed in districts not found to be slum areas.

In contrast to above enactments, both State and Federal, involving slum clearance and low cost housing, the Federal Act of 1949 relates to slum clearance and urban redevelopment, sec. 1460 (a) and (c), Chap. 8A, 42 U.S.C.A., reading in part: "'Redevelopment area' means an area which is appropriate for development or redevelopment and within which a project area is located. * * * (c) 'Project' may include (1) acquisition of (i) a slum area or a deteriorated or deteriorating area which is predominantly residential in character, * * * (2) demolition and removal of buildings and improvements; (3) installation, construction, or reconstruction of streets, utilities, and other site improvements essential to the preparation of sites for uses in accordance with the redevelopment plan; and (4) making the land available for development or redevelopment by *private enterprise* or public agencies (including sale, initial leasing, or retention by the local public agency itself) at its fair value for uses in accordance with the redevelopment plan. * * *" (Emphasis ours.)

It will be noted from above provisions that (1) the Federal Housing Act of 1949 contemplates the acquisition of slum or deteriorated areas to be redeveloped for predominantly residential uses; that (2) the Federal Act of 1937 authorizing aid for slum clearance and low rent housing was paralleled by Articles 1269k and 1269*l*, (Texas Legislature), and that (3) the instant plans of appellees for slum clearance and urban redevelopment as defined in the Federal Act of 1949 have no counterpart in State legislation other than as may be found in the earlier 1937 Housing Law. But appellees contend that Art. 1269k expressly authorizes a removal of slum districts; that after an Authority has acquired title to and cleared such an area the public purpose has been accomplished and the Authority is not thereafter required to hold title to the property ad infinitum, but is empowered under the 1937 statute to replan and rezone the lands, laying out new streets, utilities, etc.; and as remodeled and restricted, to sell or lease the same for private or business uses.

There is no definition of a "redevelopment project" in Art. 1269k, and a study thereof reveals that in sec. 3(i) is embraced the scope of work which is to be undertaken by the Housing Authority; the word "slum" as defined in the preceding paragraph (h) to be considered solely in conjunction with paragraph (i), "Housing Project"; the latter paragraph embracing either (a) slum clearance and *"the adaption of such area to public purposes, including parks or other recreational or community purposes"* (emphasis ours); or (b) providing for living accommodations for persons of low income and, appurtenant thereto, the laying out of streets, providing sewers and water service, parks, site preparation, etc.; or (c) a combination of above named purposes. No authority is found in the Act for carrying out the work of constructing streets, sewers, furnishing water service, parks, site preparation, etc., except as appurtenant to the providing of living accommodations for persons of low income or as a part of the adaption of the area after clearance to above emphasized public use.

It is thus seen that from an analysis of Art. 1269k, and as appellant McCord points out, slum clearance is authorized on the one hand and the providing of living accommodations on the other, or a combination of the two, but there are no provisions in the pertinent statutes granting the powers claimed in plaintiffs' pleading except where a low cost housing project is contemplated or some public establishment is to be served. Appellees assume, mistakenly we think, that slum

clearance under the statutes is an end in itself, independent of any other or ultimate objective; whereas the provisions of Art. 1269k, sec. 3(i), plainly evidence the clearing of slums to be only a means to the end of low cost housing or accomplishment of the named public purposes, "including parks," etc.; in which connection it is not contended that the proposed redevelopment of an area acquired by condemnation is ipso facto for a public use. In 29 C.J.S., Eminent Domain, § 22, p. 806, the rule is stated: "The right to exercise the power of eminent domain must be conferred by statute, either in express words or by necessary implication. Such power being in derogation of common right, the acts conferring it are to be strictly construed in favor of the landowner", and "the power should not be gathered from doubtful inferences, * * *." Texas cases in support include Hall v. Wilbarger County, Tex.Civ.App., 37 S.W.2d 1041, affirmed Tex. Com.App., 55 S.W.2d 797; Van Valkenburgh v. Ford, Tex.Civ.App., 207 S.W. 405, affirmed Tex.Com.App., 228 S.W. 194; Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539; Brazos River Conservation and Reclamation Dist. v. Harmon, Tex.Civ. App., 178 S.W.2d 281; King v. Harris County Flood Control District, Tex.Civ. App., 210 S.W.2d 438. "The substance of those rules" (on eminent domain), says the Court in Wood v. Bird, Tex.Civ.App., 32 S.W.2d 271, 273, "seems to be that such a right may not be exercised except where the plain letter of the law permits it, * *."

In Housing Authority of City of Dallas v. Higginbotham, supra, the Supreme Court has upheld the constitutionality of the Housing Authority Law of 1937 with attendant right of eminent domain; the Legislature having supplied sufficient definitions and standards for guidance of the Authority in the exercise of its powers and performance of duties thereunder. Here, as we have seen, appellees' proposal of slum clearance and permanent salvage of condemned areas is to be accomplished by methods entirely different, i. e., by sale or lease of the acquired properties to private developers, without statutory guidance by way of governing standards or definitive procedure. In support of the position that their redevelopment project in connection with slum clearance constitutes a public use, appellees rely upon Belovsky v. Redevelopment Authority, etc., 357 Pa. 329, 54 A.2d 277, 172 A.L.R. 953; Schenck v. City of Pittsburgh, 364 Pa. 31, 70 A.2d 612; Zurn v. City of Chicago, 389 Ill. 114, 59 N.E.2d 18 and People ex rel. Tuohy v. City of Chicago, 394 Ill. 477, 68 N.E.2d 761; but in those fact situations the power of eminent domain had been authorized by legislative Acts that were held in the cited cases to be constitutional. Here, as already noted, we have no statutes with a like redevelopment of the condemned properties as the specific objective. Appellees in answer claim that adequate powers already exist under the Housing Act of 1937; citing for example sec. 8(f), 1269k, empowering it (Authority) to investigate living, dwelling, and housing conditions and means and methods of improving same; to make studies and recommendations relating to the problem of clearing, replanning, and reconstructing slum areas; and sec. 8(d), "* * * to sell, lease, exchange, transfer, assign, pledge, or dispose of any real or personal property or any interest therein * * *." These paragraphs, however, relate back and have reference to sec. 3(i), "Housing Project," within which definition the Authority's power of condemnation must be confined. Nowhere in sec. 3(i) is the Authority empowered to undertake the projects envisaged by the Federal Housing Act of 1949 as they pertain to ultimate sale or lease of condemned properties for redevelopment by private enterprise.

Commendable as these plans of urban redevelopment may be, their consummation must await the passage of adequate and appropriate legislation. Until such a time, it is our conclusion that appellees lack the powers they seek presently to assert. Likewise it would appear from what has been said that point 6 (both briefs) should be sustained, that of appellant McCord reading: "Article 1269k * * * and amendments thereto contain provisions relating to slum clearance and projects to provide dwelling accommodations for per-

114

sons of low income. Such provisions pertain to public purposes only. Provisions pertaining to a private purpose, that of a redevelopment project, constitute a subject not germane to the provision relating to public purposes. A statute may not contain two subjects unless germane to each other. The court erred in failing to hold such article void as to these claimed powers." Deeming it unnecessary to discuss other points raised on this appeal, the cause is reversed and here rendered denying the declaratory relief sought.