J. E. PATE et al., Appellants,

v.

COASTAL STATES GAS PRODUCING COMPANY, Appellee.

No. 3299.

Court of Civil Appeals of Texas.

Eastland.

April 26, 1957.

Rehearing Denied May 17, 1957.

.Stafford, Atlas & .Spilman, McAllen, for appellants.

Kelley, Looney, McLean & Littleton, Edinburg, Will Wilson, Atty. Gen., John Milton Richardson, Asst. Atty. Gen., for appellee.

COLLINGS, Justice.

This is a condemnation suit brought by Coastal States Gas Producing Company, a corporation, against J. E. Pate and wife, Josephine Claire Kidd, a single person, Jefferson William Pate, Sara Katherine Ray and her husband, the El Texano Land Company, a corporation, and the Texas Company, a corporation. Plaintiff alleged that the defendant, El Texano Land Company, was the owner of the surface of a tract of land which included a described 1.84-acre tract referred to as tract number one and a 5.70-acre tract referred to as tract number two, and that the Texas Company held an oil and gas lease thereon; that other defendants held, or claimed to hold, some mineral or royalty interest therein. Plaintiff alleged that it was the owner and holder of an oil and gas lease from the State of Texas covering approximately 85 acres located on the river bed of the Rio Grande River and adjacent to the land of the defendant. Plaintiff further alleged that it was necessary in the operation of said river channel development to acquire tract number one for the purpose of the erection of power machinery and construction of storage tanks and slush pits; that the acquisition of said tract was also necessary to prevent or lessen the danger of pollution involved in the drilling of the well under the terms of its lease. Plaintiff alleged the necessity for and sought authority to drill a directional well on said tract number one to produce oil and/or gas under its lease. Plaintiff further alleged the necessity of securing a right of way over the land described as tract number two in order to travel to and from tract number one and to and from said well location to transport materials necessary in the development of said lease and oil and/or gas away from any well drilled thereon. The suit was brought under the condemnation statutes of the State of Texas, including Article 5421c, Vernon's Annotated Civil Statutes.

In accordance with plaintiff's petition special commissioners were appointed by the county judge to assess damages occasioned by the condemnation of the two tracts. Upon a hearing the commissioners assessed damages and defendants duly filed objections to the award with the county judge of Hidalgo County. At a trial in the County Court at Law said tracts were condemned pursuant to Subsection 14 of Section 8–A of Article 5421c, V.T.C.S., and pursuant to the general condemnation statutes of the state. It was stipulated that one of the purposes for which the plaintiff, Coastal States Gas Producing Company, condemned tract number one was to acquire a surface location for a directional well bottomed on the oil, gas and mineral lease held by plaintiff on the river bed of the Rio Grande River and for the purpose of locating power machinery, storage tanks, slush pits, derrick, pump, hoists and necessary substructure for the drilling of such directional well. From the judgment of the county court defendants have brought this appeal.

We overrule the contention of appellee, Coastal States Gas Producing Company, that El Texano Land Company did not perfect its appeal from the award of the commissioners, that the court erred in permitting "El Texano Land Company" to be interlined as a party appellant in the county court after the time for appeal had expired; that as to El Texano Land Company the award had become final, and that the County Court at Law acquired no jurisdiction. An instrument designated "Objections to the Decision of the Commissioners" was timely filed. The instrument was styled "In the Matter of the Proceedings by Coastal States Gas Producing Company, a Corporation, for Condemnation of Property of J. E. Pate, et al." and was filed by attorneys designated as "Attorneys for Defendants". The portion of the body of the instrument material to the matter here under consideration prior to the interlineation in the first paragraph was as follows:

"Now comes J. E. Pate, and Kate Pate, wife of J. E. Pate, Jefferson William Pate, Sara Katherine Ray and Alfred I. Ray, her husband, and Josephine Claire Kidd, hereinafter called Defendants and filed this their objections to the decision and award of the Commissioners.

\*   \*   \*   \*   \*   \*

"XIV. That the sum of $920.00 awarded to the Defendant, El Texano Land Company by the Commissioners for the damages for the granting of an easement on said Tract One is wholly insufficient in that the value, of Tract One sought to be condemned is of a reasonable value greatly in excess of the sum so awarded.

"XV. That the sum of $2,280.00 awarded to Defendant, El Texano Land Company as damages for the granting of an easement on said Tract Two is wholly insufficient in that the value of said Tract Two sought to be condemned is of a reasonable value greatly in excess of the sum so awarded."

When the contention was made by appellee's motion to the trial court that the El Texano Land Company had not perfected its appeal from the commissioners' award, the county court permitted counsel for defendants to include by interlineation the name of El Texano Land Company among the defendants named in the first paragraph of the objections to the award as above set out. The court in its order overruling appellee's motion stated: "The Court is further of the opinion that the omission was a typographical error and in view of the appearance of the name of El Texano Land Company in other portions of the objections—this Court has jurisdiction of these proceedings in so far as El Texano Land Company, a corporation, is concerned." In our opinion the instrument designated "Objections to the Decisions of the Commissioners" sufficiently named El Texano Land Company as an ap-

pellant. In Hall v. Johnson, Tex.Civ.App., 40 S.W. 46, a petition was held sufficient which designated the parties by name only in the caption. In the instant case the name of the defendant El Texano Land Company did not appear in subsequent paragraphs in which complaint was made of the amount of the damages awarded to El Texano Land Company. The cross-point is overruled. Ray v. Fowler, Tex. Civ.App., 144 S.W.2d 665.

Subsection 14 of Section 8–a, Article 5421c, V.T.C.S., provides as follows:

"Subsection 14. The Board, or any person or corporation holding a contract with said Board, including all leaseholders or assignees, or any leaseholder or assignee holding a lease contract with the State or under the State Land Commission prior to the enactment of Acts 1931, 42nd Legislature, 2nd Called Session, Page 64, Chapter 40, or what is commonly known as the River Bed or Board of Mineral Development Law, for the development of oil and/or gas resources, in State-owned river beds, streams or channels, is hereby granted the right of Eminent Domain and Condemnation as provided by the General Laws of the State of Texas for the following purposes:

"(1) Of securing such additional adjoining land as may be necessary for erection of power machinery and construction of storage tanks and slush pits in the operation of said channel or river development and to prevent or lessen the dangers of pollution involved in the drilling of any well in any such river beds or channels.

"(2) For the purpose of securing a right of way to and from any well which may be drilled in said river beds or channels so as to enable the Board or any of its contract or leaseholders to go to and from said wells and to transport any materials necessary in the development of said river beds or channels and to transport oil and/or gas away from any wells.

"Provided, that at any time hereafter, in all cases, where the landowner and/or other interested parties and the leaseholder to said river beds and/or Board are unable to agree on the measure of damages, if any, and it is necessary to resort to condemnation proceedings, that in the event it should become necessary for any offset well to be drilled by said landowner or other interested party within the area or surface of the land taken, condemned or thus sought to be condemned, the mineral rights of the condemned party shall at all times be superior to the surface rights of the condemning party, and in the event of any conflict on account of the drilling of any offset well or wells, under and by virtue of a permit from the Railroad Commission, the condemning party shall be compelled to move any interferences or hindrances whatsoever therewith, or to go around such offset well, and in the event of his failure or refusal to immediately move any such interfering object or hindrance, upon demand, the owner of the mineral rights shall have the right to immediately do so himself without any liability.

"It is the intent of this Act that the mineral rights of the owner shall at all times be superior to the surface rights of the condemning party, and in determining the measure of damages, if any, in such condemnation proceedings, the Commissioners or any other tribunal shall not take into consideration the value of the oil or gas lying under said rights of way of such condemned properties, and this Act, as amended, which same is remedial only, shall apply to all cases or proceedings now pending."

Appellants contend that the above statute is contrary to and in violation of both the State and Federal Constitutions in

that (1) it permits the taking of private property for a use which is not public, and (2) that it is vague and indefinite in its attempted authorization of condemnation for the purpose of preventing or lessening the dangers of pollution. The controlling consideration in determining whether an intended use is public as contemplated by constitutional provisions is "that property is taken for public use as intended by the constitution only when there results to the public some definite right or use in the business or undertaking to which the property is devoted." 16 Tex.Jur.(Rev.) 288; Borden v. Trespalacios Rice & Irrigation Company, 98 Tex. 494, 86 S.W. 11.

■■ The purpose of the condemnation of property as provided by Article 5421c, supra, is for the use in the "operation of said channel or river development." River beds of the State of Texas, including the bed and channel of the Rio Grande River, are State owned lands. Income from the mineral development of such river beds has by statutory provision been dedicated to the permanent school funds of the State. Article 5416a, V.T.C.S. The Public School System is the business or undertaking to which the land here condemned is devoted. Any use which is in the interest or furtherance of the Public School System of the State is a public use. We, therefore, overrule appellants' contention that Article 5421c permits and authorizes the taking of private property for a use which is not a public use. We also overrule the contention that the statute is so vague and indefinite that it is in violation of the constitution.

In appellants' first and second points it is contended that the court erred in holding that Subsection 14 of Section 8–A of Article 5421c granted to appellee, Coastal States Gas Producing Company, the right to condemn tract number one for the purpose (1) of a surface location for a directional well and (2) of locating power machinery, slush pits, derricks, storage tanks, pumps, hoists and necessary structure for the drilling of a directional well. Ap-

pellants contend that the right to condemn for the purpose of "erection of power machinery, and construction of storage tanks and slush pits in the operation of said channel or river development" does not include the right to use the surface as the drilling site for a directional well. Subsection 14 does not specifically grant to appellee the right to condemn tract number one for the purpose of a surface location of a directional well. If appellee has this right under the statute it must be by implication.

Appellee contends that the above quoted language of the statute, taken together with the portion immediately following which reads: "and to prevent or lessen dangers of pollution involved in the drilling of any well in any such river beds or channels" does include or imply the right to a drilling site for a directional well to be bottomed on the State owned river bed. In support of this contention appellee urges that (1) "power machinery" as used in the statute means and includes a drilling rig and all necessary appliances to accomplish the purposes of drilling an oil well; (2) that since the statute permits condemnation of land for the location of machinery necessary to drill an oil well it would be absurd to say that the machinery could not be used for its intended purpose on the land condemned therefor; that it would be foolish to say that a site for well drilling machinery may be condemned but that the machinery cannot be operated thereon. Appellee urges that the legislative intent that the land condemned might be used as a drilling site is further shown by the provision concerning prevention of the danger of pollution.

■■ It is a well accepted general rule that a statute should be construed as a whole and that all parts thereof relating to the same subject matter are to be considered together and construed in connection with and, if possible, in harmony with the whole. 82 C.J.S. Statutes § 345; Short v. W. T. Carter & Bro., 133 Tex. 202, 126 S.W.2d 953; City of Mason v. West Texas

Utilities Company, 150 Tex. 18, 237 S.W.2d 273. Meaning and effect should be given every word, term, phrase or part of a statute, if possible, unless "the exigencies of the situation, as presented from a consideration of the statute as a whole, imperatively demand that some word, phrase or sentence be discarded, rendered useless, or deprived of meaning." 82 C.J.S. Statutes § 346, p. 714.

An application of the above stated rules of construction to the statute in question does not in our opinion justify or permit the implication of a legislative intent that the condemned land may be used as a drilling site for a directional well. True, it is more consistent with the general purpose of the statute to hold that the grant of the right to condemn land for such a drilling site was intended than to hold otherwise. Certainly, the drilling of an oil well on the bank of a river presents less danger of pollution than a well in the river bed or channel. But the location of slush pits and storage tanks on the bank of the river also tends to prevent or lessen the danger of pollution. The right to condemn for this purpose was expressly provided for in the statute, but there was no provision for drilling directional wells on the bank. On the contrary, that portion of the statute which refers to the purpose to prevent pollution confines or limits the right to drill wells "*in* any such river beds or channels". (Emphasis ours.) In the next paragraph of the statute, which deals with securing right of way, there again appears the specific limitation to wells "drilled *in*" river beds and channels. This express limitation or reference to wells drilled "in" river beds or channels is, in our opinion, controlling when considered in connection with the statute as a whole.

The express limitation referring to wells "in" the river bed excludes the right to drill wells "on" the condemned land. 39 Tex.Jur. 188. The right to drill directional wells on the bank of the stream could not be implied without disregarding and rendering useless and of no meaning or effect the provision for drilling "in" the river bed. To construe the statute to mean that the right to condemn does not include the right to drill directional wells on the bank of the stream does not defeat the purpose of the statute. As previously indicated, the purpose of the statute can be accomplished, at least to some extent, by the condemnation of land for slush pits and storage tanks. The "exigencies of the situation, as presented from a consideration of the statute as a whole" do not imperatively demand that references to wells drilled "in" river beds or channels be disregarded. Appellants' first and second points are sustained.

Appellee further contends that the judgment was authorized and may be upheld by Article 1495, Vernon's Texas Civil Statutes, which they urge confers the power to condemn lands for the purpose here involved. Article 1495 grants no right of condemnation. Article 1497, which is also a part of Chapter 15, does grant the right of condemnation for certain purposes. A reading of this statute, however, clearly shows that the right of condemnation there granted was not intended to cover the right to drill directional wells on river banks or elsewhere.

The judgment is reversed and here rendere for appellants in so far as it grants to appellee the right to use tract number one for a surface location for a directional well. In all other respects the judgment is affirmed.