COASTAL STATES GAS PRODUCING COMPANY ET AL
v. J. E. PATE ET AL

No. A-6419. Decided February 12, 1958.
(309 S.W. 2d Series 828)

172

*Will Wilson,* Attorney General, *James H. Rogers, Milton Richardson,* Assistants Attorney General, for the State, *Kelley, Looney, McLean & Littleton* and *L. C. McLean,* of Edinburg, *Looney, Clark & Morehead, Everett L. Looney* and *R. Dean Morehead,* all of Austin, for Coastal States Gas Producing Company, petitioners.

The Court of Civil Appeals erred in holding that the quoted statute does not specifically grant to appellees the right to condemn the site sought for a surface location of a directional well to be bottomed on a river bed lease owned by appellees. Also in holding that there was no express Legislative intent which authorized petitioner, Coastal States, to condemn said tract, or site, for the purpose of locating such power machinery thereon as was necessary for the drilling of a directional well. Hall v. Mutual Benefiit Health and Acc. Ass'n., 220 S.W. 2d 934; City of Mason v. West Texas Utilities Co., 150 Texas 18, 237 S.W. 2d 273; Ludwig v. Kirby, 13 N.J.S. 116, 80 Atl. 2d 239, 242.

*Stafford, Atles & Spilman, Morris Atlas,* and *Carl H. Judin, Jr.,* all of McAllen, for respondents.

In rebuttal cited McCord v. Housing Authority City of Dallas, 234 S.W. 2d 108, error refused, 149 Texas 587, 236 S.W. 2d 115; Brazos River Con. & Rec. Dist. v. Harmon, 178 S.W. 2d 281, error refused w.o.m.; Sinclair v. City of Center, 107 S.W. 2d 921; Gulf, C. & S. F. Ry. Co. v. Kerfoot, 85 Texas 267, 20 S.W. 59.

MR. JUSTICE WALKER delivered the opinion of the Court.

Subsection 14, Sec. 8-A, of Art. 5421c, Vernon's Ann. Texas Civ. Stat., grants to any leaseholder or assignee holding a lease under the State for development of oil and gas in State-owned river beds, the right of eminent domain for the following purposes:

"(1) Of securing such additional adjoining lands as may be necessary for erection of power machinery, and construction of storage tanks and slush pits in the operation of said channel or river development and to prevent or lessen the dangers of pollution involved in the drilling of any well in such river beds or channels.

"(2) For the purpose of securing a right of way to and from any well which may be drilled in said river beds or channels so as to enable the Board or any of its contract or leaseholders to go to and from said wells and to transport any materials necessary in the development of said river beds or channels and to transport oil and/or gas away from any wells."

■ The controlling questions in this case are: (1) Does the statute authorize the condemnation of land for use as a site to drill a directional well into the producing sands under the river bed? and (2) Is the statute unconstitutional in that it permits the taking of private property for a use that is not public? We answer the first question in the affirmative and the second in the negative.

Coastal States Gas Producing Company, petitioner, holds an oil and gas lease under the State covering approximately 85 acres located in the bed of the Rio Grande River adjacent to land owned by J. E. Pate et al., respondents. This proceeding was instituted by Coastal against respondents to condemn a tract of 1.84 acres for the purpose of: (1) erecting power machinery and constructing storage tanks and slush pits thereon, and (2) drilling a directional well therefrom into the strata underlying the river bed.[1] After objections to the award of the commissioners were filed in the County Court at Law, the State, acting by the Attorney General in behalf of the School Land Board, intervened in the cause and adopted Coastal's pleadings. The latter's right to condemn and use the 1.84-acre tract for all of the purposes mentioned was upheld by the trial court. The Court of Civil Appeals concluded that while Art. 5421c is constitutional, it does not authorize the condemnation of land for use as a site to drill a directional well. The judgment of the trial court, in so far as it granted Coastal the right to use the land for that purpose, was accordingly reversed and rendered in favor of respondents. 302 S.W. 2d 185. Coastal and the State applied for writs of error, and both applications were granted.

---

1.—Coastal also sought and obtained a right of way across respondents' land for ingress and egress to and from the 1.84-acre tract, and its right thereto is not questioned here.

We agree with the Court of Civil Appeals that Art. 1497, Vernon's Ann. Texas Civ. Stat., does not contemplate the condemnation of land on river banks or elsewhere as a site for drilling a directional well. If Coastal has that power, it must be found in provisions of Art. 5421c quoted above.

By the express terms of this article, the landowner retains title to the oil and gas under the condemned property. It also seems clear that the condemning party may acquire only an easement in the land taken. Respondents do not contend that Coastal was guilty of fraud or bad faith, or acted arbitrarily or capriciously, in deciding that the acquisition of the land is necesssary for all the purposes mentioned above, and its determination in that respect is therefore conclusive. See Housing Authority of City of Dallas v. Higginbotham, 135 Texas 158, 143 S.W. 2d 79, 130 A.L.R. 1053. Nor do they question the company's right, if the statute is constitutional, to take and use the surface of the 1.84-acre tract for erection of power machinery and construction of storage tanks and slush pits. As the case reaches us, moreover, it must be assumed that respondents have been adequately compensated for all damages sustained by them. The question we must decide is whether Coastal, being entitled to condemn and use the surface of the land for certain purposes, may also acquire the right to place a rig thereon and drill a well through the subsurface into the strata underlying the river. There is no suggestion that such a well will have any greater tendency to drain respondents' land than a vertical well bottomed at the same point.

█ Although the statute does not mention directional drilling, it expressly grants the power to condemn property on the river bank for the erection of "power machinery." Petitioners contend that the quoted phrase is broad enough to include a drilling rig, while respondents insist that the statute must be construed strictly in their favor and that when so construed it does not grant the right to condemn property for a site to drill a directional well. It is true that the power of eminent domain must be conferred by the Legislature, either expressly or by necessary implications, and will not be gathered from doubtful inferences. Statutes granting the same are strictly construed in favor of the landowner and against those corporations and arms of the State vested therewith. See City of Houston v. Derby, Texas Civ. App., 215 S.W. 2d 690 (wr. ref.) ; McCord v. Housing Authority, Texas Civ. App., 234 S.W. 2d 108 (wr. ref. n.r.e., 149 Texas 587, 236 S.W. 2d 115) ; Brazos River Conservation & Reclammation District v. Harmon, Texas Civ. App., 178 S.W. 2d 281 (wr. ref.

w.m.) ; 29 C.J.S. Eminent Domain, Sec. 22, p. 806; 18 Am. Jur. Eminent Domain, Sec. 26, p. 650.

Strict construction is not, however, the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose. See Franklin County Coal Co. v. Ames, 359 Ill. 178, 194 N.E. 268; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W. 2d 920; 82 C.J.S. Statutes, Sec. 387, p. 915; 50 Am. Jur. Statutes, Sec. 389, p. 408.

■ The adjective "power" means operated by or producing mechanical force or energy as distinguished from human power. See Webster's New International Dictionary, Unabridged, 2nd ed. 1950; Hall v. Mutual Ben. Health & Accident Ass'n., Texas Civ. App., 220 S.W. 2d 934 (wr. ref.). According to Webster, the word "machinery" refers to machines in general or collectively, and in its popular and wider sense a machine is any combination of mechanical parts. together with the framework and fastenings supporting and connecting them, which serve to transmit and modify force and motion so as to produce some given effect or do some desired kind of work. After stating that machines other than those operating on material are commonly designated by special names, the same authority points out that one form of hoisting machine is called a derrick. The term "machinery" in different contexts has also been judicially construed to include a derrick or a line of attached drill pipe in the well. See Cleveland v. Hightower, 108 Okla. 84, 234 Pac. 614; Miller v. F. R. Patch Mfg. Co., 101 App. Div. 22, 91 N.Y.S. 870; Hawkins v. Frick-Reid Supply Corp., 5th Cir., 154 Fed. 2d 88. In the light of these definitions and decisions, it is clear to us that a drilling rig, with its derrick, engine, boiler, drilling tools and equipment, can fairly and reasonably be said to constitute power machinery.

■ The phrase is not defined or limited by the lawmakers and must be accorded its full meaning if necessary to accomplish the legislative purpose in enacting the statute. The declared purposes of Art. 5421c are to promote mineral development of State-owned river bed property and to prevent or lessen the dangers of pollution resulting from such development. These ends cannot always be achieved by placing the rig on the sur-

face of the river and the slush pits, storage tanks and other power machinery on the bank. In some instances there will still be an appreciable danger of downstream pollution caused by flooding, blowouts or damage to pipe lines. The rig might also constitute an obstruction to navigation. It is evident that these dangers will be minimized or avoided and the purposes of the statute more fully effectuated by drilling a directional well into the river bed from a site on the bank. This leads to the conclusion that the quoted phrase should be given the interpretation for which petitioners contend.

Respondents argue that this construction is untenable in view of the other provisions of the statute. The latter part of Subsection 14 provides that the mineral rights of the condemned party shall be superior to the surface rights of the condemning party, but this does not negative the right of the latter to acquire an easement in the subsurface. It will also be noted that the two subparagraphs quoted above mention wells drilled "in" river beds or channels. The Court of Civil Appeals regarded this language as controlling and concluded that the statute authorizes property to be taken only for facilities used in connection with a well drilled at a surface location between the banks of the stream. The reference in subparagraph (1) to wells drilled in the river bed does not militate against the construction urged by petitioners, because the drilling of a directional well from a site on the bank would certainly tend to lessen or prevent the dangers of pollution involved in drilling at a point in the stream.

■ The second subparagraph deals with the problem of securing a right of way to and from any well drilled in a river bed or channel. From a reading of the entire subsection, it is clear that when the lawmakers spoke of the river bed, they were not referring merely to the portion of the earth's surface which lies between the banks of the stream. Mention is made of the development of oil and gas resources "in" State-owned river beds, which obviously does not mean only minerals located on the surface of the earth and between the river banks but includes oil and gas under the river bed.

In speaking of river beds and channels, the Legislature had in mind three-dimensional segments of the earth, the surface areas of which are defined by the banks of the stream. When a directional hole is bored from a location on the bank into the strata underlying the river, therefore, the well is drilled partly in the river bed. Since a directional well thus satisfies the requirements of the statute, we are convinced that the provisions

of subparagraph (1) should not be accorded anything less than their full meaning. This construction harmonizes and gives effect to all parts of the act and at the same time permits the law to operate in a way that will carry out its manifest purposes.

It could not be said that the Legislature intended to authorize power machinery to be placed but not operated on the condemned property. The right to erect power machinery in the form of a drilling rig includes, by necessary implication, the right to operate the same for its intended purpose in developing the minerals under the river bed. Since the condemning party acquires no interest in the minerals under the property taken, a rig erected thereon could only be used to drill a directional well. We hold, therefore, that the statute, expressly and by necessary implication, grants the power to condemn land for use as a site to drill a directional well into the river bed.

■ Although respondents did not apply for writ of error, we have examined their brief in the Court of Civil Appeals to determine whether there is another ground upon which the judgment of that court can be upheld. They there contend that the statute permits private property to be taken for a use that is not public and thus violates the implied prohibition of Art. 1, Sec. 17, of our Constitution. It is fundamental that a person's property cannot be taken for the benefit of another without a justifying public purpose. Marrs v. Railroad Commission, 142 Texas 293, 177 S.W. 2d 941. No hard and fast rule can be laid down for determining public use, however, and each case is usually decided upon the basis of its own facts and the surrounding circumstances. See Housing Authority v. Higginbotham, supra.

The parties do not cite and we have not found a Texas decision that bears directly or by close analogy upon the facts and circumstances of the present case. As pointed out in Housing Authority v. Higginbotham, supra, this court has adopted a rather liberal view as to what is or is not a public use. On the other hand, we have refused to accept the definition adopted by some authorities which makes the phrase mean nothing more than public welfare or good and under which almost any kind of business which promotes the prosperity or comfort of the community might be aided by the power of eminent domain. Borden v. Trespalacios Rice & Irrigation Co., 98 Texas 494, 86 S.W. 11, 107 Am. St. Rep. 640.

In the case last cited, it was said that property is taken for

public use only when there results to the public some definite right or use in the business of undertaking to which the property is devoted. Property condemned and used by the State itself for the development of its mineral resources clearly would be put to a public use, and we do not believe a different rule can be applied to the State's lessee under the facts of this case. By the terms of the lease under which Coastal operates, onefourth of the gross production is reserved to the State and this income has been dedicated to the Permanent School Fund. Art. 5416a, Vernon's Ann. Texas Stat. As pointed out above, the condemning party acquires only an easement in the property taken, and the land will revert to its former owners if and when its use for purposes authorized by the statute is abandoned. It thus is clear that the property can only be devoted to the business of discovering and producing State-owned mineral resources for the benefit of the Permanent School Fund. The lessee may make a profit out of the venture, but this in itself does not make the use private rather than public. Since the public has a direct, tangible and substantial interest and right in the undertaking, it is our opinion that the land will be devoted to a public use within the meaning of the Constitution.

■ Petitioners also contend that El Texano Land Company, one of the respondents did not perfect an appeal from the award of the commissioners. We approve the holding of the Court of Civil Appeals on this point. The relevant facts are stated in its opinion and will not be repeated here. Although Texano's name did not appear in the introductory paragraph of the objections as originally filed, at least two paragraphs of the instrument disclosed that it was complaining of the damages awarded to it by the commissioners. The objections in this form were sufficient to perfect the company's appeal, and the court could then allow it to amend and set up additional grounds for attacking the award. See Gulf, C. & S. F. Ry. Co. v. Kerfoot, 85 Texas 267, 20 S.W. 59. This was done, in effect, by permitting its name to be added to the list of defendants in the introductory paragraph.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered February 12, 1958.