Opinion issued May 20, 2005













In The
Court of Appeals
For The
First District of Texas




NO. 01-00-01163-CV
NO. 01-00-01169-CV




MALCOMSON ROAD UTILITY DISTRICT, Appellant

V.

FRANK GEORGE NEWSOM, Appellee




On Appeal from the County Civil Court At Law No. 3
 Harris County, Texas
Trial Court Cause Nos. 691,631 & 691,632




OPINION ON REHEARING

          Appellant, Malcomson Road Utility District (“the District”), has moved for
rehearing. So has appellee, Frank George Newsom. We grant the District’s rehearing
motion, deny Newsom’s, withdraw our opinion of June 5, 2003, and substitute this
opinion in its stead.
          The District appeals from two final judgments that denied its motions for
partial summary judgment; granted Newsom’s motions for summary judgment;
denied the District the right to condemn Newsom’s property; awarded Newsom
attorney’s fees and possession of and improvements on the property that the District
had sought to condemn; and dismissed the causes for want of jurisdiction. We
determine if fact issues exist precluding summary judgment for either party on the
following matters: (1) whether the property was sought for public uses; (2) whether
the District’s determinations of public necessity were arbitrary and capricious or were
made in bad faith; (3) whether the District and Newsom were unable to agree on
damages before filing suit; (4) whether the takings violated due process or equal
protection; (5) whether the District improperly “delegated” its eminent domain
powers to private developers competing with Newsom; and (6) whether Newsom may
raise, for the first time on rehearing, a new challenge to the condemnation. We
reverse the judgments and remand the causes.
Background
          Newsom owned a northern and a southern tract of undeveloped land outside
the District’s boundaries. A drainage ditch lay along the eastern boundary of
Newsom’s northern tract. David Garrett, the vice-president of a corporate landowner
that wished to develop its nearby tract into a residential subdivision, tried to purchase
2.6178 acres along the eastern edge of Newsom’s northern tract to expand the
drainage ditch, which Harris County Flood Control District (“HCFCD”) required for
development of Garrett’s subdivision, called Lakewood Grove. Similarly, John
Santasiero, the owner of nearby property that included a residential subdivision, tried
to purchase 2.58 acres at the southern end of Newsom’s southern tract to build a
retention pond that HCFCD required for development of Santasiero’s subdivision,
called Villagio. Newsom rejected the offers.
          After Newsom rejected their offers, the developers asked the District to
condemn the portions of Newsom’s land that they had tried to purchase. The
District’s board eventually determined that the taking of Newsom’s land in the
requested amounts for the retention pond and ditch expansion was a public necessity
that would serve the public purpose of drainage. The District made an offer to
Newsom for each piece of land. Newsom rejected outright the placement of a pond
on his property. He also rejected the amount offered for the land for the ditch
expansion and counter-offered with a higher price.
 
 
          Upon Newsom’s rejections and counter-offer, the District filed separate
condemnation proceedings in county court for each piece of property. See Tex. Prop.
Code Ann. §§ 21.012, 21.013 (Vernon 2004). We designate these suits the “pond
case” (trial court cause number 691,631; appellate cause number 01-00-01163-CV)
and the “ditch case” (trial court cause number 691,632; appellate cause number 01-00-01169-CV), denoting the purpose for which the District sought to condemn the
land. In each case, the trial court appointed special commissioners, who, after a
hearing, awarded damages of $49,021 in the pond case and of $49,739 in the ditch
case. See Tex. Prop. Code Ann. §§ 21.014, 21.015 (Vernon 2004). The District
deposited the determined amounts into the court’s registry, took possession of those
portions of Newsom’s land, and began improvements on the property. See Tex.
Prop. Code Ann. § 21.021(a)(2) (Vernon 2004). 
          Newsom timely filed original and amended objections to the commissioners’
awards. See Tex. Prop. Code Ann. § 21.018(a) (Vernon 2004). He simultaneously
filed original and amended pleas to the jurisdiction, arguing that the District had not
made good-faith offers of damages before filing suit, that his property was being
taken for private uses and without public necessity, that the takings were arbitrary and
capricious and fraudulent, and that the District improperly “delegated” its eminent-domain powers to the nearby competing developers.
          By original and supplemental motions for partial summary judgment, the
District argued that (1) under rule 166a(c), it had satisfied all conditions entitling it
to condemnation, leaving only the land’s value for determination, and that (2) under
rule 166a(i), Newsom could produce no evidence supporting his defenses that the
District’s determinations of public necessity for the condemnations were arbitrary and
capricious or unreasonable. See Tex. R. Civ. P. 166a(c), (i). By his own motions for
summary judgment under rule 166a(c), Newsom argued in both cases that (1) the
District’s determinations of public use and necessity were arbitrary and capricious,
resulted from fraud or bad faith, or were abuses of discretion; (2) the District did not
show that the parties were unable to agree on damages before the District filed suit
because the District did not make good-faith offers of damages; (3) the District
improperly delegated its eminent-domain powers to the competing developers; and
(4) the takings violated equal protection and due process.
          Without specifying its reasoning, the trial court denied the District’s motions
for partial summary judgment, granted Newsom’s motions for summary judgment,
and dismissed the causes for want of jurisdiction. The District appealed. During the
trial court’s plenary power, Newsom moved to recover statutory attorney’s fees,
damages arising from the District’s temporary taking of Newsom’s property, and
possession of the property that the District had temporarily taken. See Tex. Prop.
Code Ann. § 21.019 (Vernon 2004), §§ 21.044(a), 21.062 (Vernon 2000). While
appeal was pending, we granted the parties’ joint motion to abate the appeal and to
remand the cause for the trial court to dispose of Newsom’s pending motions. On
remand, the trial court entered final judgments in each cause, reaffirming its summary
judgment rulings, dismissing the District’s condemnation suits for want of
jurisdiction, awarding Newsom his attorney’s fees from trial and contingent
attorney’s fees for appeal, awarding Newsom damages for the District’s temporary
taking of his property, and returning to him possession of the disputed property,
including awarding him the improvements made by the District to that property
during the District’s temporary possession.
Standard of Review and Burden of Proof
          Because the parties moved for rule-166a(c) and rule-166a(i) summary
judgment, we apply the well-established standards of review applicable to summary
judgments. Summary judgment under rule 166a(c) is proper only when a movant
establishes that there is no genuine issue of material fact and that he is entitled to
judgment as a matter of law. Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640,
644 (Tex. 1995). A defendant is entitled to summary judgment if the evidence
disproves as a matter of law at least one element of each of the plaintiff’s causes of
action or if it conclusively establishes all elements of an affirmative defense. Id.
          A party may move for a “no-evidence” summary judgment under rule 166a(i)
“if there is no evidence of one or more essential elements of a claim or defense on
which an adverse party would have the burden of proof at trial.” Flameout Design
& Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment is,
therefore, like a directed verdict. See id. “The trial court must grant the motion
unless the nonmovant produces more than a scintilla of evidence raising a genuine
issue of material fact on the challenged elements.” Id. In reviewing either type of
summary judgment, we indulge every reasonable inference in favor of the non-movant, resolve any doubts in its favor, and take as true all evidence favorable to it. 
Johnson, 891 S.W.2d at 644; Flameout Design, 994 S.W.2d at 834.
          When both sides move for summary judgment and the trial court grants one
motion and denies the other, we can consider both motions, their evidence, and their
issues and may render the judgment that the trial court should have rendered. See CU
Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998). When an order
granting summary judgment does not specify the grounds upon which the trial court
ruled, we must affirm to the extent that any of the summary judgment grounds is
meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).
 
          On rehearing, Newsom urges us to apply a different standard of review from
the one applicable to summary judgments. Specifically, Newsom relies on the
standard of review adopted in Hubenak v. San Jacinto Gas Transmission Co., which
this Court issued shortly before the District filed a supplemental brief on original
submission. See 65 S.W.3d 791, 798 (Tex. App.—Houston [1st Dist.] 2001)
(“Hubenak II”), aff’d, 141 S.W.3d 172 (Tex. 2004) (“Hubenak III”).
          In Hubenak II, the landowners appealed from an adverse condemnation
judgment, arguing that the trial court lacked subject-matter jurisdiction because the
condemnor had failed to show that it was unable to agree with the landowners on
damages, which, they argued, was a jurisdictional prerequisite to filing suit. Id. at
796. Although the judgment was rendered on cross-motions for summary judgment,
we determined that the proper standard of review for determining whether the unable-to-agree jurisdictional requisite had been satisfied was legal sufficiency of the
evidence. Id. at 797-98. That is, we deemed the trial court implicitly to have made
a plenary factual determination that the condemnor had satisfied this jurisdictional
prerequisite, even though the procedural mechanism for that ruling was summary
judgment. See id. at 798. We then looked for more than a scintilla of evidence in the
summary judgment record to support the implied ruling. See id. Of course, that
standard of review is generally the inverse of the standard applicable to a summary
judgment ruling.
          We first note that the Hubenak II court applied the cited standard of review
only to the determination of whether the parties were unable to agree, not to any other
determination relevant to a condemnation proceeding. See id. at 798. Assuming (as
Newsom does) without deciding that the Hubenak II standard of review could apply
to determinations other than the unable-to-agree requirement, and further assuming
without deciding that Newsom may even urge the application of the Hubenak II
standard of review on appeal,


 we hold that that standard has been overruled. We
reach this conclusion for two reasons. 
          First, after having noted that the courts of appeals involved in the suits that it
was reviewing had applied different standards of review to summary judgment rulings
on the unable-to-agree requirement,


 the Hubenak III court held:
The procedural vehicle chosen by the condemnors to determine whether
they were “unable to agree” with the landowners in the cases before us
was a motion for partial summary judgment. Trial courts can, however,
resolve “unable to agree” issues through other procedural vehicles, as
they resolve many threshold pre-trial matters, including ruling on a plea
in abatement. Because the issue was raised in the present cases in
motions for partial summary judgment asserting that the condemnors
established as a matter of law that they were “unable to agree” with the
landowners, we must determine whether there are any questions of fact.

Hubenak III, 141 S.W.3d at 184-85 (footnote omitted). The supreme court thus
applied a summary judgment standard of review in the same suit in which we had
applied a legal-sufficiency standard of review. See id. By so doing, the supreme
court implicitly overruled the standard of review that we had espoused in Hubenak
II.
          Second, when Hubenak II was decided, the unable-to-agree requirement was
generally considered jurisdictional. See, e.g., Hubenak II, 65 S.W.3d at 796. Our
standard-of-review holding in Hubenak II was grounded on the jurisdictional nature
of the unable-to-agree requirement. See id. at 797-98. For our holding, we relied
heavily on State v. Hipp, 832 S.W.2d 71 (Tex. App.—Austin 1992), rev’d on other
grounds sub nom State v. Dowd, 867 S.W.2d 781 (Tex. 1993). Hubenak II, 65
S.W.3d at 797-98. In Hipp, the trial court did not decide the unable-to-agree
jurisdictional requirement as a preliminary matter, but submitted the issue to the jury,
which failed to find that the State had negotiated in good faith. Hipp, 832 S.W.2d at
74. Based on the jury’s findings, the trial court dismissed the condemnation suits for
lack of subject-matter jurisdiction. Id. On appeal, the Hipp court held that the
determination of the unable-to-agree requirement was a preliminary matter for the
court, reasoning:
If . . . a factual dispute as to the fulfillment of this statutory
prerequisite is a question for the jury, an entire eminent-domain
proceeding would be void and the case dismissed if, at the conclusion
of the trial, the jury found that the condemnor had failed to satisfy the
unable-to-agree requirement. . . . Such a process obviously results in an
enormous waste of time and money for all parties involved, including
the judicial system. The purpose of requiring the condemnor to plead
and prove that it made a bona fide effort to agree is to prevent needless
litigation. A process that permitted a complete jury trial simply to
determine if the trial court had jurisdiction over the cause would
frustrate that purpose.
 
We conclude that the trial judge should determine as a threshold
matter whether the condemnor has satisfied the unable-to-agree
prerequisite to bringing suit. Such a process comports with the general
rule that the determination of jurisdiction is made by the court, not the
jury. A matter of first consideration by any court is the determination of
its own jurisdiction. Moreover, a court has the power to determine any
facts on which its jurisdiction depends. Indeed, Texas courts must often
resolve factual issues in making jurisdictional determinations. . . . Thus,
our conclusion that the judge, not the jury, should decide whether the
condemnor has satisfied the statutory requirement comports with
traditional Texas practice as to the determination of jurisdictional
matters.

Id. at 75-76 (citations omitted).
          Based on this reasoning, the Hipp court held that, although the jury had
determined the unable-to-agree issue, there was “nothing in the record . . . to indicate
that the trial court felt bound by the jury’s verdict on this issue”; the Hipp court thus
presumed that, in dismissing the suit, the trial court had made an implied finding that
paralleled the jury’s verdict and reviewed that implied finding accordingly. Id. at 76. 
It was this reasoning and holding of Hipp that we applied to our review of the
summary judgment ruling in Hubenak II. See Hubenak II, 65 S.W.3d at 798.
          After Hipp and Hubenak II issued, however, the Texas Supreme Court held that
the unable-to-agree requirement is not jurisdictional. Hubenak III, 141 S.W.3d at
183. Accordingly, the basis for our applying a legal-sufficiency review to a summary
judgment ruling in Hubenak II no longer exists. For this reason, too, Hubenak III has
implicitly overruled our standard-of-review holding from Hubenak II. 
          Before Hubenak III, the issue of which standard of review applied to a
determination, rendered upon summary judgment, of the unable-to-agree requirement
had been described as a “thorny” one. See Cusack Ranch Corp. v. MidTexas Pipeline
Co., 71 S.W.3d 395, 398 (Tex. App.—Corpus Christi 2001), aff’d sub nom Hubenak
III, 141 S.W.3d 172 (Tex. 2004); compare Hubenak II, 65 S.W.3d at 798 (applying
legal-sufficiency standard of review to ruling on unable-to-agree requirement, despite
fact that order appealed was summary judgment ruling) with Hubenak v. San Jacinto
Gas Transmission Co., 37 S.W.3d 133, 135 (Tex. App.—Eastland 2001, pet. denied)
(applying summary judgment standard and rejecting sufficiency standard when order
appealed was summary judgment ruling concerning unable-to-agree requirement). 
The Hubenak III court cut through that Gordian knot in a way contrary to the position
that Newsom takes on rehearing. 
          In accordance with Hubenak III, we hold that the summary judgment standard
of review applies in an appeal from an adverse condemnation ruling rendered upon
motion for summary judgment. We thus overrule Newsom’s rehearing argument
concerning the standard of review.
Public Use
          In issue one, the District argues that the trial court erred in denying its rule-166a(c) motions for partial summary judgment in each suit because the District
proved that it had satisfied all conditions entitling it to condemnation. One of those
conditions was that the acquisition of Newsom’s property was for a public use. In his
responses to the District’s summary judgment motions, Newsom argued that fact
issues existed on whether (1) the takings were for a public use because the
improvements benefitted only the developers’ lands or (2) the District fraudulently
or arbitrarily and capriciously concluded that the takings were for a public use. In his
rule-166a(c) summary judgment motions, Newsom argued that he had conclusively
proved that the takings were not for a public use because the improvements allegedly
benefitted only the developers’ lands. In issue two, the District argues that the trial
court erred in granting Newsom’s rule-166a(c) summary judgment motions on this
ground.
A.      The District’s Statutory Basis for Eminent Domain
          The District is clothed with the following authority:
(a)A district shall have the functions, powers, authority, rights, and
duties which will permit accomplishment of the purposes for which it
was created.
 
(b)A district is authorized to purchase, construct, acquire, own,
operate, maintain, repair, improve, or extend inside and outside its
boundaries any and all works, improvements, facilities, plants,
equipment, and appliances necessary to accomplish the purposes of the
district authorized by the constitution, this code, or other law, including
all works, improvements, facilities, plants, equipment, and appliances
incident, helpful, or necessary to:
 
. . .
 
 (3)gather, conduct, divert, and control local storm water or
other local harmful excesses of water in a district; . . . .

Tex. Water Code Ann. § 54.201(a), (b)(3) (Vernon Supp. 2004-2005).
          The District sought to condemn Newsom’s property under the following
statute:
A district . . . may acquire by condemnation any land, easements, or
other property inside or outside the district boundaries . . . necessary for
water, sanitary sewer, storm drainage, or flood drainage or control
purposes or for any of its projects or purposes, and may elect to
condemn either the fee simple title or a lesser property interest.

Id. § 49.222(a) (Vernon 2000) (emphasis added); see also id. § 49.218(a)-(c) (Vernon
Supp. 2004-2005) (granting districts right to purchase land or interest in land
considered necessary for districts’ purposes).
B.      The Requirement That the Taking Be for Public Use
          “The Constitution itself protects private property from any taking except for
the public use . . . .” Borden v. Trespalacios Rice & Irrigation Co., 86 S.W. 11, 15
(Tex. 1905); see Tex. Const. art. I, § 17. What constitutes a public use is a question
of law for the court. Tenngasco Gas Gathering Co. v. Fischer, 653 S.W.2d 469, 474
(Tex. App.—Corpus Christi 1983, writ ref’d n.r.e.); Atwood v. Willacy County
Navigation Dist., 271 S.W.2d 137, 140 (Tex. Civ. App.—San Antonio 1954, writ
ref’d n.r.e.). However, “the legislative declaration that a use is public and the
delegation of power of eminent domain [are] to be given great weight by the court”
in determining whether a particular use is public or private. Fischer, 653 S.W.2d at
475; accord Atwood, 271 S.W.2d at 140. Put another way, the legislative declaration
is binding unless the use is “clearly and palpably” private. Hous. Auth. of the City of
Dallas v. Higginbotham, 143 S.W.2d 79, 83 (Tex. 1940).
          What is important in the public-use determination is the character of the right
inuring to the public, not the extent to which the public’s right is exercised. Fischer,
653 S.W.2d at 475. As the Texas Supreme Court has explained,
 
[i]t is immaterial if the use is limited to citizens of a local neighborhood,
or that the number of citizens likely to avail themselves of it is
inconsiderable, so long as it is open to all who choose to avail
themselves of it. The mere fact that the advantage of the use inures to
a particular individual or enterprise, or group thereof, will not deprive
it of its public character.
Higginbotham, 143 S.W.2d at 84 (quoting West v. Whitehead, 238 S.W. 976, 978
(Tex. Civ. App.—San Antonio 1922, writ ref’d)). “Public use” has, accordingly, been
defined in various ways, one of which is that the use is public when the public obtains
some definite right or use in the undertaking to which the property is devoted. See
Coastal States Gas Producing Co. v. Pate, 309 S.W.2d 828, 833 (Tex. 1958). The
Texas Supreme Court thus construes “public use” rather liberally, although the court
has rejected a definition that means nothing more than public welfare or good or
under which any business that promotes the community’s prosperity or comfort might
be aided. See id.
C.      Application of the Law to the Summary Judgment Evidence
          We begin by noting that the Legislature has declared that the District’s
purposes, for which it has been delegated the power of eminent domain, extend to
conducting activities like the building of retention ponds and the expanding of
drainage ditches. See Tex. Water Code Ann. § 54.201(a), (b)(3). This is a
legislative determination that such projects are public uses. That declaration is
binding unless the uses are “clearly and palpably” private. See Higginbotham, 143
S.W.2d at 83.
          The District’s board determined that both the ditch expansion and the retention
pond were for public uses. The District presented summary judgment evidence that
the expanded ditch and the pond were for the public purpose of regulating excess or
flood waters. There was also evidence that any water to the north of the pond, not
just water from the Santasiero property, could drain into the pond. In response,
Newsom pointed to the following evidence: (1) the District’s board resolutions stated
that the pond was necessary to “serve” Santasiero’s property and that the expansion
was necessary to widen the “Lakewood Grove ditch”; (2) the pond was of a size to
handle the amount of estimated overflow from the Santasiero developments only,
even though the pond could receive water from anywhere upland; and (3) the ditch
was being built to facilitate HCFCD’s approval of the Lakewood Grove subdivision.


 
          The Legislature has indicated that projects like these are for public purposes,



and the District produced evidence that both the ditch expansion and the pond
construction would serve the public purpose of draining excess water from the area. 
That showing sufficed. It is immaterial whether the District wanted the pond and the
ditch expansion to assist other developers’ properties, as long as the public could
benefit from or use the improvements and the improvements were not “clearly and
palpably private.” See Higginbotham, 143 S.W.2d at 83; Pate, 309 S.W.2d at 833.
          Furthermore, with respect to the retention pond, no one disputes that water
from any uphill areas could flow into it. This fact distinguishes the pond from the
private roads in the cases on which Newsom relies.


 Given that water from public
areas generally can flow into the pond, it is immaterial that the pond was built in the
size necessary to accommodate estimated water run-off from Santasiero’s
development. What is important is that water from anywhere upland could flow into
the pond, not the extent to which others’ water would flow there or the extent to
which the pond might not, with later development in the area, suffice adequately to
serve all properties. See Higginbotham, 143 S.W.2d at 84 (“It is immaterial if the use
is limited to the citizens of a local neighborhood, or that the number of citizens likely
to avail themselves of it is inconsiderable, so long as it is open to all who choose to
avail themselves of it.”); Fischer, 653 S.W.2d at 475 (explaining that character of
right inuring to public, not extent to which public’s right is exercised, is the important
consideration).
D.      Conclusion
          The District thus conclusively proved that the retention pond and the ditch
expansion were for public uses. Newsom did not raise fact issues on these matters
or conclusively prove that these improvements were not for public uses.
          Accordingly, the trial court erred to the extent that it denied the District’s
motions for partial summary judgment on the ground of public use and to the extent
that it granted Newsom’s motions for summary judgment on the ground that no public
use existed as a matter of law. 
          We sustain those portions of issues one and two concerning the takings’ being
for public uses.
Public Necessity
          Also under issue one, the District argues that the trial court erred in denying its
rule-166a(c) motions for partial summary judgment in each suit because the District
proved that there was a public necessity for the acquisition of Newsom’s property. 
In issue two, the District argues that the trial court erred in overruling its rule-166a(i)
motions for partial summary judgment on Newsom’s defense that the District’s
determinations of public necessity were arbitrary and capricious or unreasonable. In
his responses to the District’s summary judgment motions, Newsom argued that fact
issues existed on whether the District fraudulently or arbitrarily and capriciously
concluded that using his property for the projects was necessary. In his rule-166a(c)
summary judgment motions, Newsom argued that he had conclusively proved the
same thing. In issue two, the District argues that the trial court erred in granting
Newsom’s rule-166a(c) summary judgment motions on this ground.
A.      The Requirement That the Taking Be Necessary for the Declared Public
Use

          The applicable eminent-domain statute requires that takings be necessary for
the declared public purposes. See Tex. Prop. Code Ann. § 49.222(a) (Vernon 2000). 
The condemnor’s discretion to determine what and how much land to condemn for
its purposes—that is, to determine public necessity—is nearly absolute. See Jones
v. City of Mineola, 203 S.W.2d 1020, 1022 (Tex. Civ. App—Texarkana 1947, writ
ref’d); Ludewig v. Houston Pipeline Co., 773 S.W.2d 610, 614 (Tex. App.—Corpus
Christi 1989, writ denied). Courts do not review the exercise of that discretion
without a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily
and capriciously, i.e., that the condemnor clearly abused its discretion. Meaney v.
Nueces County Navigation Dist. No. 1, 222 S.W.2d 402, 405, 408 (Tex. Civ.
App.—San Antonio 1949, writ ref’d); Ludewig, 773 S.W.2d at 614; Bradford v.
Magnolia Pipeline Co., 262 S.W.2d 242, 246 (Tex. Civ. App.—Eastland 1953, no
writ) (holding same even when eminent-domain statute requires finding of necessity,
as does statute at issue in present case). The rationale for this rule is that, otherwise,
one factfinder
might hold on competent evidence that land in question in the suit (a
constituent part of the whole of a larger amount necessary to the
accomplishment of the objective of the condemning authority) was not
necessary to such purposes and the accomplishments of an entire project
destroyed because of the inability to obtain the small part of land which
[was] made the subject of the particular condemnation suit.

Wagoner v. City of Arlington, 345 S.W.2d 759, 763 (Tex. Civ. App.—Fort Worth
1961, writ ref’d n.r.e.); accord Bradford, 262 S.W.2d at 246. The landowner has the
burden to establish these defenses. Ludewig, 773 S.W.2d at 614; Snellen v. Brazoria
County, 224 S.W.2d 305, 310 (Tex. Civ. App.—Galveston 1949, writ ref’d n.r.e.).
          In the condemnation context, fraud means “any act, omission or concealment,
which involved a breach of legal duty, trust or confidence, justly reposed and is
injurious to another, or by which an undue and unconscientious advantage is taken
of another.” Wagoner, 345 S.W.2d at 763; accord Boucher v. Texas Turnpike Auth.,
317 S.W.2d 594, 601 (Tex. Civ. App.—Texarkana 1958, no writ). 
          In the same context, arbitrary and capricious, like abuse of discretion, means
“willful and unreasoning action, action without consideration and in disregard of the
facts and circumstances . . . .” Wagoner, 345 S.W.2d at 763; see Brazos River
Conservation & Reclamation Dist. v. Harmon, 178 S.W.2d 281, 292-93 (Tex. Civ.
App.—Eastland 1944, writ ref’d w.o.m.) (explaining abuse of discretion in terms of
arbitrariness, capriciousness, partiality, and the like). Therefore, when “there is room
for two opinions, an action cannot be deemed arbitrary when it is exercised honestly
and upon due consideration, regardless of how strongly one believes an erroneous
conclusion was reached.” Ludewig, 773 S.W.2d at 614; see Meaney, 222 S.W.2d at
408; Wagoner, 345 S.W.2d at 763, 764. Similarly, a showing that alternate plans are
feasible or better does not make the condemnation determination arbitrary or
capricious. Ludewig, 773 S.W.2d at 614; Wagoner, 345 S.W.2d at 763. 
          Accordingly, to show that the District acted arbitrarily and capriciously,
Newsom had to negate any reasonable basis for determining what and how much land
to condemn for the pond and the ditch expansion. See Wagoner, 345 S.W.2d at 763
(noting that non-movant landowner could “have raised the issue [of arbitrary and
capricious determination of necessity] only if it was unquestionably established in the
evidence that there could have been no actual public necessity for the city to seek the
land in question . . . .”); cf. Ludewig, 773 S.W.2d at 614-15 (in reviewing the granting
of judgment notwithstanding verdict in favor of condemnor, despite jury’s answer
that condemnor acted arbitrarily and capriciously in determining route and amount
of land to be condemned, holding that landowners’ evidence that condemnor could
have adopted plans circumventing landowners’ property or taking less of it was no
evidence of arbitrary or capricious behavior). 
          One way that Newsom could negate any reasonable basis for the District’s
determining what and how much land to condemn—that is, one way that he could
show arbitrary and capricious action by the District—was to show that the District
had completely abdicated its responsibilities in determining whether, what, or how
much land to condemn. Put another way, Newsom could show that the District had
declined to exercise discretion that the law required it to exercise.


 If Newsom could
show that the District had failed to exercise discretion that it was required to exercise,
then, necessarily, he would also have raised a fact issue regarding any bases on which
the District showed that it had acted: evidence showing a failure to exercise any
discretion on a given occasion counters evidence showing that discretion was actually
exercised in particular ways or for particular reasons on that occasion.
          On rehearing, the District argues that we have improperly “imposed an added
level of scrutiny” to the review of condemnation decisions by having recognized a
failure-to-exercise-discretion means of showing arbitrary and capricious action. 
Specifically, the District argues that (1) abuse of discretion in the context of
condemnation proceedings differs from abuse of discretion in other contexts, given
that, in the former, a landowner must negate any reasonable bases for the condemning
authority’s action and, thus, (2) the non-condemnation authority on which we rely for
our challenged holding does not apply in this case. We disagree. 
          First, it is not unusual in administrative law to label as arbitrary and capricious
an agency’s failure to exercise discretion that it is required to exercise.


 Second, in
administrative law, the concept of arbitrary and capricious agency action is sometimes
explained in terms of an agency’s abuse of discretion.


 Accordingly, authority
concerning the general standard for abuse of discretion outside the realm of
administrative law can be instructive in the administrative-law context under
appropriate circumstances. Third, the Landon opinion—on which we rely and which
the District claims does not apply because Landon concerned review of a judicial
decision—itself analogized review for arbitrary and capricious agency action to
review for abuse of discretion in judicial decisions. See Landon, 724 S.W.2d at 935.


 
Finally, as a matter of logic, evidence showing a complete failure to exercise
discretion in taking an action also negates any reasonable basis for the agency’s
action. For these reasons, we reject this rehearing argument of the District.



 
B.      Application of the Law to the Summary Judgment Evidence
          1.       The District’s Evidence
          Regarding the pond, a land planner testified for the District that, as HCFCD
had concluded, a pond was necessary. Santasiero’s engineer, Newsom’s engineer,
and Newsom’s land planner agreed that a retention pond was necessary, but did not
specify a location. HCFCD did not require that the pond be placed on Newsom’s
property, but Ray Zobel, president of the District’s board, testified that the board
selected Newsom’s property for the pond because that location would have allowed
Villagio to have more homes, thus increasing the tax base more than if Newsom had
been allowed to develop his own land.
          Regarding the ditch expansion, an engineer and a land planner testified for the
District that, as HCFCD had concluded, the project was necessary. Newsom’s own
land planner agreed that HCFCD “would prudently require” the ditch expansion. The
existing ditch ran along the eastern boundary of Newsom’s northern tract of land. 
The only direction in which the ditch could be expanded was westward, onto
Newsom’s property, because the land to the east of the ditch had already been
developed. 
          2.       Newsom’s Evidence
          Regarding the pond, it was undisputed that HCFCD did not care where the
pond was placed, and none of HCFCD’s regulations required that the pond be placed
on Newsom’s property. Rather, HCFCD recognized that the pond could have been
placed on Santasiero’s property, on Newsom’s property, or in a downland location
on neither’s property. For this reason, HCFCD did not tell anyone with the District
that Newsom’s land had to be condemned for the pond. Santasiero’s engineer also
concluded that the pond could be placed in any of those three places, although he was
not asked to assess which location was best. Nonetheless, the District’s offer letter
to Newsom stated that HCFCD required the taking specifically of his property for the
pond, although board president Zobel later admitted that HCFCD required only a
pond, not the placement of that pond on Newsom’s property.
          The District’s summary judgment evidence showed that the board chose
Newsom’s land for the pond because doing so would increase the tax base more than
if Newsom had been allowed to keep his land and develop it himself. However,
board president Zobel admitted that the District did not have its engineer confirm
Santasiero’s claim that it would be more profitable for the District to place the pond
on Newsom’s property, i.e., that developing Villagio would increase the tax base
more than developing Newsom’s land. Rather, the District evidently took
Santasiero’s word as true, even though his interest was adverse to Newsom’s. In fact,
it was Santasiero who chose the pond’s location. Likewise, the District did not ask
its own engineer to evaluate the need for this condemnation, even though the District
would have looked to its engineer to advise it whether to condemn this land. 
Additionally, board president Zobel admitted that he was not advised that
Santasiero’s engineer had identified alternative locations for the pond. Zobel also
testified that he had “no idea” why the board took Newsom’s land in fee simple,
rather than in easement.
          Regarding the ditch expansion, Newsom produced evidence that the District
did not consider or investigate the scope of the taking. For example, HCFCD did not
require that the rights-of-way for drainage ditches such as this be taken in fee simple,
but instead required only easements. HCFCD would have approved Villagio’s
expansion had only an easement been taken there. Nonetheless, the District sought
to condemn Newsom’s land in fee simple, even though the sole alleged basis for the
taking was that HCFCD required the ditch expansion, and despite the fact that
HCFCD never required a taking in fee. In fact, board president Zobel could not recall
that anyone had consulted the board on why Newsom’s land was being taken in fee,
rather than in easement, and Zobel himself did not know the difference between a fee
interest and an easement. 
          Viewing the evidence in the light most favorable to Newsom and taking all
reasonable inferences in his favor, for purposes of the District’s motions for partial
summary judgment, we hold that the above evidence raises a fact issue on whether
the District declined to exercise its discretion in determining whose land to condemn
for the pond and in deciding whether to condemn Newsom’s land in easement or in
fee for the ditch expansion. That is, the evidence raised a fact issue on whether the
District reached its condemnation decisions arbitrarily and capriciously or by abusing
its discretion. Cf. Landon, 724 S.W.2d at 938-40. We also hold that, viewing the
evidence in the light most favorable to the District and taking all reasonable
inferences in its favor, for purposes of Newsom’s motions for summary judgment,
Newsom did not conclusively prove that the District acted arbitrarily and capriciously
in determining necessity.
          Further evidence regarding both tracts of land raises a fact issue, as well. The
District signed agreements with both Santasiero and Garrett (the “condemnation
agreements”) soon after it voted to condemn Newsom’s property. In the
condemnation agreements, the developers agreed to pay all costs of condemnation,
including attorney’s, expert, and appraisal fees. If the condemnation succeeded, and
if bonds were passed and approved, the District agreed to reimburse the developers
pursuant to previously-executed prefunding agreements


 with the same developers. 
The condemnation agreements further provided as follows: “If the condemnation of
the above referenced tract is held to be invalid either judicially or otherwise, you will
not be reimbursed by the District for any of the costs associated with the
condemnation.” The developers also agreed to furnish the following items, among
others, to the District: a legal description of the sought-after property, plans and
specifications for the pond and the ditch enlargement, and an appraisal of the sought-after land.
          The condemnation agreements were separate contracts from the prefunding
agreements. The condemnation agreements paralleled the earlier prefunding
agreements in that the condemnation agreements required the developers to front all
costs of condemnation and allowed for reimbursement “pursuant to the Prefunding
Agreement[s]” if condemnation was completed and bonds were sold and approved. 
The condemnation agreements differed from the earlier prefunding agreements,
however, in that the condemnation agreements essentially indemnified the District for
any costs should condemnation fail for any reason. 
          The District argues that the condemnation agreements were merely prefunding
agreements, the use of which is common and legal. Newsom does not contest the
validity of prefunding agreements generally. Rather, Newsom’s position is that the
condemnation agreements exceeded mere prefunding agreements to the extent that
they provided that the District would not have to reimburse the developers if the
condemnation proceedings were unsuccessful for any reason—allegedly taking away
the District’s statutory disincentive to condemn property improperly or without
adequate investigation. Additionally, Newsom points to the fact that the
condemnation agreements made the competing developers solely responsible for
determining the appraised value and the parameters of the land to be taken. He
argues that this provision supports his theory that the District abdicated its duty to
determine whether and what to condemn.
          Without deciding the legality or propriety of this type of agreement generally,



we note that the condemnation agreements here relieved the District of certain
statutory burdens that are intended as safeguards for landowners. Those safeguards
are found in Property Code section 21.019. See Tex. Prop. Code Ann. § 21.019. 
Section 21.019 either requires or allows the trial court to award the landowner its
“reasonable and necessary fees for attorneys, appraisers, and photographers and for
the other expenses incurred by the property owner” through the time of dismissal or
judgment when a condemnation is voluntarily or involuntarily dismissed or when the
trial court denies the right to condemn. See id. § 21.019(b), (c). The effect of section
21.019(c), which applies here because it applies when the trial court grants the
landowner’s motion to dismiss or otherwise denies condemnation, is to allow the trial
court to make landowner whole if he prevails and to discourage the condemnor from
seeking condemnation unfairly or irresponsibly. Cf. State v. Tamminga, 928 S.W.2d
737, 740 (Tex. App.—Waco 1996, no writ) (holding that purpose of section
21.019(b), concerning voluntary dismissal, is to reimburse landowner for expenses
incurred in abandoned condemnation proceeding and “to discourage the
commencement and subsequent abandonment of condemnation proceedings”); Brazos
County Water Control & Improvement Dist. No. 1 v. Salvaggio, 698 S.W.2d 173, 176
(Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.) (noting that enactment of
predecessor to section 21.019(b) in 1969 “indicate[d] the legislature’s intent to
require condemnors to act more responsibly and fairly toward landowners”). 
          Viewed in the appropriate light, the condemnation agreements at issue here
removed that disincentive by, in effect, indemnifying the District for any costs or fees
associated with the condemnation proceedings, regardless of whether the District
acted arbitrarily, capriciously, or fraudulently. In light of Newsom’s other evidence,
from which one could reasonably infer that the District abdicated its discretion in
deciding what land to condemn for the pond and whether to condemn Newsom’s land
in easement or in fee for the ditch expansion, the condemnation agreements raised an
inference that the District abdicated its discretion because it knew that it would not
have to pay should condemnation fail for whatever reason—including, for example,
because the District’s decisions to condemn were later found to be arbitrary or
capricious.
C.      Conclusion
          We hold that Newsom raised a fact issue on whether the District abdicated its
discretion to determine whether and how much to condemn, i.e., that the District
acted arbitrarily and capriciously. Cf. Landon, 724 S.W.2d at 938-40. Therefore, the
trial court did not err to the extent that it denied the District’s rule-166a(c) and rule-166a(i) motions for partial summary judgment on the grounds of the District’s
determination of public necessity or on Newsom’s defenses to that determination. 
However, we further hold that Newsom did not prove conclusively his entitlement to
summary judgment on his defenses to the District’s determination of public necessity. 
Therefore, the trial court erred to the extent that it granted summary judgment for
Newsom on this ground.
          Accordingly, we overrule that portion of issue one and sustain the
corresponding portion of issue two concerning the necessity for taking Newsom’s
land.
Unable-to-Agree Requirement
          In issue one, the District argues that the trial court erred in denying its rule-166a(c) motions for partial summary judgment on the ground that the District proved
that it had fulfilled the unable-to-agree requirement by having made a good-faith offer
of damages, which Newsom rejected, before suit. Newsom’s summary judgment
responses argued that fact issues precluded the granting of summary judgment on this
ground. He later moved for rule-166a(c) summary judgment on the ground that he
had conclusively negated the existence of good-faith offers of damages and, thus, had
also negated the fulfillment of the unable-to-agree requirement. In issue two, the
District argues that the trial court erred in granting Newsom’s rule-166a(c) summary
judgment motions on this ground.
A.      The Law
          The District had the burden to plead and to prove that, before it filed the
condemnation proceeding, it was unable to agree with Newsom on the amount of
damages that would result from the taking. See Hubenak II, 65 S.W.3d at 796; Tex.
Prop. Code Ann. § 21.012(a), (b)(4) (allowing condemnor that is “unable to agree”
with the landowner on amount of damages to begin condemnation proceeding and
requiring petition to allege same). A condemnor is generally not required to continue
to attempt negotiations when further attempts appear futile. Id. 
          Before Hubenak III, our Court (along with other courts of appeals) had held
that “[t]he ‘unable-to-agree’ condition refers to a bona fide attempt to agree on
damages and includes a bona fide offer by the condemnor to pay the estimated true
value of land.” Hubenak II, 65 S.W.3d at 797; see Hipp, 832 S.W.2d at 77. The
courts adopting this standard had generally held that a bona fide offer is one that is
made “[i]n or with good faith; honestly, openly, and sincerely; without
deceit or fraud.” In the context of eminent domain proceedings, the
offer must not be arbitrary and capricious; rather, it must be based on a
reasonably thorough investigation and honest assessment of the amount
of just compensation due the landowner as a result of the taking.

Hipp, 832 S.W.2d at 78 (citations omitted); accord Hubenak II, 65 S.W.3d at 798. 
This “good faith” standard was subjective. We applied this subjective standard on
original submission in this case and, under that standard, held that a fact issue existed
on whether the District had made a good-faith offer for damages.
          However, after our opinion issued, and during the pendency of rehearing, the
Texas Supreme Court issued its opinion in Hubenak III, on which the District relies
by post-submission brief. The Hubenak III court rejected a good-faith, subjective
analysis in determining whether the unable-to-agree requirement is met, disapproving
of any courts-of-appeals opinions to the contrary. Hubenak III, 141 S.W.3d at 186-87. The Hubenak III court reasoned that (1) despite applying a good-faith standard,
most courts of appeals had required minimal evidence anyway to satisfy the unable-to-agree requirement; (2) the statutory condemnation scheme does not contemplate
scrutiny of the offer’s dollar amount—which in most cases will be the measure of
whether an offer was made in good faith—at the preliminary point at which the court
considers the unable-to-agree issue because such an inquiry would be duplicative of
the later determination of damages; and (3) the statutory scheme does not contemplate
subjective inquiry into good faith because the purpose of the unable-to-agree
requirement is simply to forestall litigation and to prevent needless appeals. Id. 
Simply put, the Hubenak III opinion clarified that subjective, good-faith analysis is
irrelevant to evaluating the unable-to-agree requirement in condemnation cases.
B.      Application of the Law to the Summary Judgment Evidence
          The District points to the following summary judgment evidence that it
produced below: (1) the appraiser based his valuation of $19,000 per acre ($49,020
and $49,738 for the land for the pond and for the ditch, respectively) in part on recent
sales of local property lacking utilities, which Newsom’s property also lacked; (2) the
District offered these amounts to Newsom and even increased the offer in an
unspecified amount for the land for the pond; (3) Newsom rejected the offers,
demanding $43,560 per acre for the land for the ditch, requiring a commitment that
his entire property would be annexed and serviced by the District and would be able
to drain into the ditch, and rejecting altogether the placement of a pond on his
property; and (4) Newsom’s appraiser, David Bolton, concluded that both tracts
would have an unspecified lower value than the value that the tracts were given in
Bolton’s appraisal if they could not get access to utilities.


 Under Hubenak III, this
sufficed to carry the District’s burden to show that the parties were unable to agree
on damages. See Hubenak III, 141 S.W.3d at 187 (“The condemnors have established
that they made offers to each of the landowners before filing condemnation
proceedings. Those offers were rejected or ignored by the landowners. That is
enough to satisfy section 21.012’s requirement that the parties were ‘unable to
agree.’”); see also Hardwicke, 150 S.W.3d at 715 (holding that trial court did not err,
based on Hubenak III, if it concluded that condemnor had satisfied unable-to-agree
requirement because condemnor had sent offer letters to landowner, despite
landowner’s argument that condemnor had left all “negotiations to developer” to
conduct).
          In response, Newsom produced summary judgment evidence relating to
whether the District’s offer was made in good faith.


 Under Hubenak III, that
evidence is irrelevant to the unable-to-agree inquiry. See id., 141 S.W.3d at 186-87.
C.      Conclusion
          We hold that the trial court erred in denying the District’s rule-166a(c) motions
for partial summary judgment because the District conclusively proved that the
parties were unable to agree on damages before suit’s filing. We further hold that the
trial court erred to the extent that it granted Newsom’s rule-166a(c) summary
judgment motions on the ground that he conclusively proved that the District did not
show that the parties were unable to agree on damages.
          Accordingly, we sustain both the portion of issue one and the corresponding
portion of issue two concerning the unable-to-agree requirement.
Improper Delegation
          In issue two, the District argues that the trial court erred in granting Newsom’s
rule-166a(c) summary judgment motions on the ground that the District improperly
delegated its eminent-domain powers to the competing developers.
          Newsom’s argument below was that the District “improperly delegated its
legislative and discretionary authority to the Developers and essentially abdicated its
power of eminent domain to these Developers and thus deprived Mr. Newsom of the
necessary constitutional and statutory safeguards ordinarily guaranteed potential
condemnees.” The facts on which he relied in support were essentially those on
which he relied in his other summary judgment grounds. Newsom also argued that
the District “sold” its eminent-domain powers by entering into the condemnation
agreements. These arguments are merely other ways of alleging that the District
determined where, what, and how much to condemn by fraudulent or arbitrary means. 
We have already held that fact issues precluded summary judgment on those defenses.
          Newsom relied on the test set out in Proctor v. Andrews, a case in which the
plaintiffs alleged that a statute improperly delegated legislative authority to private
entities. 972 S.W.2d 729, 732, 734-35 (Tex. 1998). As the District points out in its
reply brief, no such statute or rule delegated legislative authority to the developers
here, and Proctor’s non-delegation paradigm simply does not fit under the facts of
this case. Here, the District exercised the power of condemnation, albeit, Newsom
alleges, in collusion with the developers. And whether the District colluded or acted
improperly with local developers, as Newsom alleges, is a matter that relates to fraud
or arbitrariness in the District’s condemnation decision, rather than a matter showing
that the District improperly delegated the power to condemn altogether.
 
          Accordingly, we hold that the trial court erred to the extent that it granted
Newsom’s rule-166a(c) summary judgment motions on this ground. We thus sustain
that portion of issue two concerning improper delegation.
Equal Protection and Due Process
          In issue two, the District argues that the trial court erred in granting Newsom’s
rule-166a(c) summary judgment motions on the ground that the exercise of eminent
domain to take his property for the developers’ benefit violated due process and equal
protection. See Saunders v. Titus County Fresh Water Supply Dist. No. 1, 847
S.W.2d 424, 427 (Tex. App.—Texarkana 1993, no writ) (noting that condemnation
of property for non-public use may violate due process); King v. Harris County Flood
Control Dist., 210 S.W.2d 438, 440 (Tex. Civ. App.—Galveston 1948, writ ref’d
n.r.e.) (same). In support of this ground, Newsom relied on the same facts on which
he relied in his other summary judgment grounds. Because we have held that
Newsom did not prove as a matter of law any of his other challenges to the
condemnation, we hold that he did not prove this summary judgment ground
conclusively, either. Therefore, the trial court could not properly have rendered
summary judgment for Newsom on this ground.
          Accordingly, we hold that the trial court erred in granting Newsom’s rule-166a(c) summary judgment motions on this ground. We thus sustain that portion of
issue two concerning equal protection and due process.
Newsom’s Additional Rehearing Argument
          In his rehearing motion, Newsom argues for the first time that the District
improperly sought to condemn a fee-simple interest, rather than an easement, because
the Property Code allegedly creates a presumption against a taking in fee simple and
because the District’s board resolution did not recite that it intended to take a fee-simple interest. Because Newsom did not raise this argument on original submission,
but could have, we decline to reach it. See McGuire v. Fed. Deposit Ins. Corp., 561
S.W.2d 213, 216 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ) (op. on reh’g)
(holding that party generally may not raise for the first time on rehearing new matters
that could have been raised earlier); Trice Prod. Co. v. Dutton Drilling Co., 333
S.W.2d 607, 617 (Tex. Civ. App.—Houston 1960, writ ref’d n.r.e.) (op. on reh’g)
(same). Additionally, it does not appear that Newsom preserved this challenge below
by raising it in his summary judgment motions or responses.


 See McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341, 343 (Tex. 1993).
Conclusions Concerning Summary Judgment
          We hold as follows:
●The trial court erred in granting Newsom’s rule-166a(c) summary
judgment motions in all respects.
 
●The trial court erred in denying the District’s rule-166a(c)
motions for partial summary judgment on the ground that the
condemnations were for public uses. 
 
●The trial court did not err in denying the District’s rule-166a(i)
motions for partial summary judgment on Newsom’s defense of
fraud, bad faith, and arbitrariness to the District’s determination
of public necessity.
 
●The trial court did not err in denying the District’s rule-166a(c)
motions for partial summary judgment on the ground that the
takings were public necessities.
 
●The trial court erred in denying the District’s rule-166a(c)
motions for partial summary judgment on the ground that the
parties were unable to agree, before the District initiated
condemnation proceedings, on the damages to be awarded
Newsom for the taking.

The District’s Supplemental Issues
          By supplemental brief, the District challenges the trial court’s final judgment
in the following respects: (1) the trial court erred in awarding Newsom contingent
appellate attorney’s fees because the Property Code allows the award of attorney’s
fees only through judgment and (2) the trial court erred in awarding Newsom the
improvements made by the District during its temporary possession of his property
because the trial court dismissed the suit for want of jurisdiction, which disposition
allegedly precludes awarding possession.
          Given that we reverse the final judgments, we need not reach the District’s
supplemental issues.
Conclusion
          We reverse the judgments and remand the causes.





                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Higley.

Justice Keyes, dissenting.